LUIS NIEVES FALCÓN, en su carácter personal y como PRESIDENTE DEL COMITÉ PRO DERECHOS HUMANOS DE PUERTO RICO, recurrido, *v.* ENRIQUE GARCÍA, en representación de y como PRESIDENTE DE LA JUNTA DE LIBERTAD BAJO PALABRA, peticionario.

*Número:* CC-2002-450          *Resuelto:* 5 de agosto de 2003

*Roberto J. Sánchez Ramos*, procurador general, y *Carmen A. Riera Cintrón*, procuradora general auxiliar, abogados de la parte peticionaria; *Frances Daniel, Nina Estrella* y *Livia Rodado Bermúdez*, abogadas del recurrido.

PER CURIAM: Nos corresponde determinar el alcance del mandato de confidencialidad dispuesto por el Art. 7 de la Ley Orgánica de la Junta de Libertad Bajo Palabra.

I

El 29 de junio de 2000, el Dr. Luis Nieves Falcón (en adelante el recurrido) presentó un recurso de *mandamus* ante el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante TPI), en contra de la Junta de Libertad Bajo Palabra (en adelante la Junta). Reclamó, en síntesis, que tenía derecho a examinar los expedientes de archivo de conmutaciones e indultos conferidos durante el período de 1976 a 1984, por el entonces Gobernador de Puerto Rico, Hon. Carlos Romero Barceló. Además, solicitó estudiar los récord administrativos de la Junta, en particular las recomendaciones que hizo ese cuerpo a la Oficina del Gobernador durante el referido período. El

recurrido adujo que la información que requería era pública y expresó que el propósito de su investigación era facilitar elementos comparativos para conocer las personas que habían sido liberadas, y bajo qué condiciones, durante la administración del licenciado Romero Barceló. Esa información la utilizaría para continuar una campaña en pro de la excarcelación de los llamados "presos políticos" que aún permanecen en presidios de Estados Unidos continentales.([1])

Posteriormente, la Junta presentó dos mociones de desestimación. Alegó, por un lado, que lo solicitado por el recurrido era un asunto de la exclusiva jurisdicción del Gobernador. Además, que no venía obligada a presentar los documentos requeridos porque eran confidenciales, según lo dispuesto por el Art. 7 de la Ley Orgánica de la Junta de Libertad Bajo Palabra, 4 L.P.R.A. sec. 1507.

> Toda la información obtenida por la Junta o por alguno de sus funcionarios o empleados, en el desempeño de sus deberes oficiales será de carácter confidencial y no podrá ser divulgada revelando el nombre del confinado en forma alguna, excepto para propósitos directamente relacionados con la administración de la justicia en casos criminales, o cuando, comprobado por la Junta que existe un interés legítimo en la información solicitada, medie el consentimiento voluntario y por escrito del confinado o liberado afectado por la divulgación o el de la persona que tenga al confinado o liberado bajo su custodia legal por estar éste incapacitado para otorgar tal consentimiento.([2])

Así las cosas, el 16 de marzo de 2001, el TPI emitió una sentencia en la cual declaró con lugar el auto de *mandamus* solicitado. Al así proceder, dispuso lo siguiente:

> [o]rdenamos a la Junta de Libertad Condicional mostrar a la parte demandante los expedientes de conmutaciones e in-

---

([1]) Se trata de aquellos prisioneros que no se acogieron a la amnistía otorgada por el ex Presidente William J. Clinton en agosto de 1999.

([2]) La Legislatura enmendó este artículo mediante la Ley Núm. 118 de 6 de julio de 2000 y la Ley Núm. 151 de 31 de octubre de 2001. Tales enmiendas fueron posteriores a la fecha en que se presentó el caso de marras ante el TPI.

dultos que custodia y que fueran conferidos por el entonces Gobernador de Puerto Rico, Lcdo. Carlos Romero Barceló, durante el periodo de 1976 a 1984.(³)

Además, expresó el TPI que de los expedientes a entregarse se diseñaría un programa, a manera de lista, para suplir exclusivamente aquella información relacionada a: (1) delito cometido; (2) sentencia; (3) años cumplidos en cárcel; (4) licencia recomendada, y (5) licencia concedida. Por último, dictaminó que no se informaría el nombre del convicto, e impuso una orden protectora con el propósito de asegurar que la información revelada sería utilizada únicamente para el fin reclamado y autorizado.

La Junta recurrió de esta decisión al Tribunal de Circuito de Apelaciones (en adelante TCA). Cuestionó aquella parte de la sentencia del TPI que le ordena entregar los expedientes al recurrido. Mediante Sentencia de 31 de enero de 2002, el TCA confirmó el dictamen de instancia. Dicho foro señaló que la Junta no demostró que existieran intereses apremiantes de mayor jerarquía que los valores protegidos por el derecho ciudadano a tener acceso a información pública, por lo que el recurrido tenía derecho a que se le entregaran los expediente solicitados.

Inconforme, la Junta presentó ante nos un recurso de *certiorari*, en el cual señaló que

> [e]rró el Tribunal de Circuito de Apelaciones al confirmar la sentencia dictada por el Tribunal de Primera Instancia[,] que ordena a la Junta de Libertad Condicional mostrar los expedientes sobre conmutaciones e indultos otorgados por el gobernador durante los años 1976 al 1984, sin tomar en consideración que dichos expedientes contienen información confidencial, especialmente cuando la propia parte demandante-recurrida indica no tener interés en la misma y cuando ya la Junta recopiló la información solicitada y está lista para entregarla.

El recurrido respondió al señalamiento e indicó que "no

---

(³) Apéndice, pág. 47.

tiene interés de conocer informe médico o psicológico o nombre de confidente alguno en relación con los expedientes solicitados".(4) No obstante, expresó que *"sí* tiene interés de examinar los expedientes *antes* de extraer la información que ha sido autorizada por el Tribunal de Primera Instancia". (Énfasis en el original.)(5)

Expedimos un auto de *certiorari* mediante Resolución de 28 de junio de 2002. Perfeccionado el recurso, resolvemos.

## II

■ Reiteradamente hemos reconocido el derecho de acceso a información pública como corolario necesario de los derechos de libertad de expresión, prensa y asociación que explícitamente propugna la Sec. 4 del Art. II de nuestra Constitución, L.P.R.A., Tomo 1, y la Primera Enmienda de la Constitución de Estados Unidos de América. La premisa que subyace a esta conclusión es que si el ciudadano no está debidamente informado del modo en que se conduce la gestión pública, se verá coartada su libertad de expresar, por medio del voto o de otra forma, su satisfacción o insatisfacción con las personas, las reglas y los procesos que le gobiernan. *Ortiz v. Dir. Adm. de los Tribunales,* 152 D.P.R. 161 (2000).

■ Ahora bien, el derecho de acceso a información pública depende, en primer lugar, de que la información solicitada sea, propiamente, pública. A esos efectos, el Art. 1(b) de la Ley de Administración de Documentos Públicos de Puerto Rico, 3 L.P.R.A. sec. 1001(b), dispone que será público

[t]odo documento que se origine, conserve, o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico

---

(4) Escrito en oposición a Informe de Procurador General, pág. 7.
(5) Íd.

de acuerdo con la ley o en relación con el manejo de asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal.

■ Una vez un documento se ubica dentro de una de las categorías citadas, se convierte en un documento de carácter público, por lo que cualquier ciudadano tiene derecho a accesarlo.[6] No obstante, este Tribunal ha establecido que tal derecho no es absoluto y debe ceder en casos de imperativo interés público. *López Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987); *Soto v. Srio. de Justicia*, 112 D.P.R. 477, 489, 493 (1982). Así, pues, el Estado puede reclamar válidamente la secretividad de información gubernamental en un número limitado de supuestos, a saber, cuando: (1) *una ley (o reglamento) así lo declara*; (2) la comunicación está protegida por alguno de los privilegios evidenciarios que puedan invocar los ciudadanos; (3) *revelar la información pueda lesionar derechos fundamentales de terceros*; (4) se trate de la identidad de un confidente, y (5) sea información oficial conforme a la Regla 31 de Evidencia, 32 L.P.R.A. Ap. IV. *Angueira v. J.L.B.P.*, 150 D.P.R. 10, 24 (2000).

■ De lo anterior se deduce que toda ley que pretenda ocultarle información a un ciudadano bajo el palio de la confidencialidad tiene que justificarse a plenitud. Como regla general, eso se satisface si: (a) la regulación gubernamental cae dentro del poder constitucional del Gobierno; (b) propulsa un interés gubernamental importante o sustancial; (c) el interés gubernamental no está relacionado con la supresión de la libertad de expresión, y (d) la restricción concomitante del derecho a la libre expresión no es

---

[6] El aún vigente Art. 409 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1781, establece que "[t]odo ciudadano tiene derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, *salvo lo expresamente dispuesto en contrario por la ley*". (Énfasis suplido.)

mayor que la esencial para propulsar ese interés. *Angueira v. J.L.B.P.*, supra, págs. 24–25.

■ Igualmente, un reclamo gubernamental de confidencialidad válido debe contener normas claras y precisas que permitan identificar adecuadamente el material y las circunstancias en que habrá de aplicarse alguna norma de accesibilidad. *Angueira v. J.L.B.P.*, supra, pág. 24. Aquella legislación que no contenga estándares apropiados para determinar el tipo de documento e información que estará sujeta al escrutinio público y que, por el contrario, establezca una norma de confidencialidad absoluta, no puede superar el rigor de la cláusula constitucional que garantiza el derecho a la libre expresión. Íd., pág. 25.

■ A tenor con estos principios, el examen judicial al cual deberá someterse cualquier reclamo de confidencialidad de documentos e información pública dependerá de la excepción que invoque el Estado *vis-à-vis* el pedido de información. *Ortiz v. Dir. Adm. de los Tribunales*, supra, pág. 178; *Angueira v. J.L.B.P.*, supra, pág. 24. En otras palabras, el tribunal deberá hacer un balance de intereses —a base de un análisis de la totalidad de las circunstancias— para determinar si el reclamo del Estado responde a la existencia de intereses apremiantes de mayor jerarquía que los valores protegidos por el derecho ciudadano a la información. *Angueira v. J.L.B.P.*, supra, pág. 27; *Noriega v. Gobernador*, 130 D.P.R. 919, 938 (1992). Ese balance se realizará de forma estricta a favor del reclamante de la solicitud y en contra del privilegio gubernamental. *López Vives v. Policía de P.R.*, supra, pág. 233.

Conforme a esta normativa, procedemos a analizar la controversia ante nos.

## III

En el caso de autos, al igual que en *Angueira v. J.L.B.P.*, supra, la Junta opone el Art. 7 de su ley orgánica, *supra*, al

derecho del recurrido a inspeccionar la totalidad del expediente. Ahora bien, no se trata de una negativa a suministrarle al recurrido la información objetiva que el TPI singularizó en su sentencia, sino de entregarle la totalidad del expediente. Es decir, la Junta no cuestiona el derecho del recurrido a tener acceso a información pública, sino el alcance del mandato del TPI. Veamos.

La Junta alega que la solicitud del recurrido, en cuanto a que se le conceda acceso a la totalidad de los expedientes solicitados, no se enmarca dentro de las dos únicas excepciones que dispone el referido Art. 7, a saber: (1) para propósitos directamente relacionados con la administración de la justicia en casos criminales, o (2) cuando, comprobado por la Junta que existe un interés legítimo en la información solicitada, medie el consentimiento voluntario y por escrito del confinado o liberado. Además, arguye la Junta que mostrar los expedientes solicitados requiere la divulgación innecesaria de información recopilada durante el proceso evaluativo de los indultos en cuestión, así como fuentes de información, nombres de confinados, prueba médica y otra data confidencial que no es necesaria para los propósitos del recurrido. Tiene razón la Junta.

En *Angueira v. J.L.B.P.*, supra, reconocimos el derecho de una víctima a tener acceso a información confidencial de su victimario, quien era considerado por la Junta para ser liberado condicionalmente. Sin embargo, en esa decisión también sostuvimos la validez del Art. 7 de la Ley Orgánica de la Junta de Libertad Bajo Palabra, *supra*. En consecuencia, luego de balancear intereses, *permitimos el acceso limitado* de la víctima al expediente en cuestión. Explicamos en esa ocasión que

[e]l principio de confidencialidad recogido en el aludido Art. 7 de la Ley Núm. 118, persigue proteger la independencia de criterio de la Junta y, a la par, la participación ciudadana en el proceso evaluativo del confinado para propósito de concluir el grado de rehabilitación y seguridad que representa, de serle

otorgada la libertad bajo palabra, y los ajustes institucionales y terapéuticos alcanzados.

. . . . . . . .

Reconocemos, pues, que la Junta está obligada a salvaguardar el mandato de ley en lo referente a los documentos de índole médica que integran el expediente. De igual forma, debe garantizar la seguridad de aquellas personas que aportaron su opinión para el proceso evaluativo del confinado. No tan sólo para hacer viable la seguridad de terceros frente al confinado, sino de posibles confrontaciones entre esos terceros y las víctimas de delito.

*A tal efecto, nuestro mandato en este caso (y demás análogos) sujeta el acceso a las limitaciones antes mencionadas.* (Énfasis suplido.) *Angueira v. J.L.B.P.*, supra, págs. 27–28.[7]

■ Aplicando al caso de autos la metodología empleada en *Angueira v. J.L.B.P.*, supra, tenemos por un lado que todo ciudadano tiene derecho a accesar la información pública que conserve el Estado. Por otra parte, nuestros precedentes expresamente han permitido un reclamo de confidencialidad gubernamental cuando, entre otras cosas, así lo disponga claramente una ley o cuando revelar información pueda lesionar derechos fundamentales de terceros. Asimismo, hemos ofrecido el remedio de acceso limitado al expediente cuando, a pesar de un reclamo legítimo de confidencialidad estatal, la interpretación restrictiva a favor del solicitante y la totalidad de las circunstancias así lo requieren.

Por lo tanto, balanceando los intereses en conflicto, entendemos que el recurrido tiene derecho a acceder cierta información que obra en los documentos que conserva la Junta. Ahora bien, ese acceso no puede ser irrestricto, o implicar que el recurrido tiene derecho a que se le entregue

---

[7] A pesar de que en *Angueira Navarro v. J.L.B.P.*, 151 D.P.R. 605 (2000), reconsideramos nuestro dictamen en *Angueira v. J.L.B.P.*, 150 D.P.R. 10 (2000), al permitirle a la víctima tener acceso a la totalidad del expediente de su victimario, esto no es óbice para que adoptemos el razonamiento de la primera decisión en el caso de autos. Nuestra reconsideración en *Angueira Navarro v. J.L.B.P.*, supra, se dio dentro del particular contexto de los derechos que cobijan a *la víctima* de delito ante los procedimientos ante la Junta de Libertad Bajo Palabra, por lo que debe entenderse limitado a esos efectos.

la totalidad del expediente. Ciertamente, la situación del recurrido no se enmarca dentro de las dos excepciones al mandato de confidencialidad dispuesto por el Art. 7, *supra*. De igual modo, los intereses y derechos de terceros pueden verse afectados con la entrega de los expedientes. Mientras que, según expresó la Junta en sus alegatos, ésta no tiene objeción en entregar aquella información que es única y exclusivamente de índole objetiva o data específica.[8] De hecho, ésta estipuló que esa información ya se ha recopilado y está a la disposición del recurrido.[9] Finalmente, el propio recurrido admitió que sólo necesita esa información para realizar su estudio.[10]

Ante esas circunstancias, lo más razonable y factible es la entrega del listado de la data objetiva solicitada y estrictamente necesaria para los objetivos del recurrido. Consideramos innecesario que se ordene mostrar la totalidad del expediente, descartando absolutamente la salvaguarda de confidencialidad del citado Art. 7 y los propósitos que ésta persigue, cuando eso no es indispensable para la investigación que realiza el recurrido. No existe en este caso una reserva de confidencialidad por parte del Estado que sea absoluta e irrazonable —*Soto v. Srio. de Justicia*, supra— que obstruya indebidamente los derechos de alguna víctima del crimen —*Angueira v. J.L.B.P.*, supra— que incida indebida e injustificadamente en los derechos de vida y libertad del solicitante —*Noriega v. Gobernador*, supra— o que lo coloque en una posición que le impida ejercer su derecho a expresarse.

En consecuencia, *se revoca la sentencia del TCA en cuanto ordena a la Junta a entregarle al recurrido los expedientes correspondientes a los indultos concedidos por el ex gobernador, Hon. Carlos Romero Barceló. Se ordena*

[8] Estos datos incluyen: (1) tipo de delito cometido; (2) sentencia dictada; (3) años cumplidos en cárcel; (4) licencia solicitada; (5) licencia recibida. Véase Petición de *certiorari*, pág. 15.

[9] Véase Petición de *certiorari*, pág. 15.

[10] Véase Apéndice, págs. 135 y 166.

*únicamente la divulgación de la data objetiva que ya ha sido recopilada por la Junta, a saber: (1) delito cometido; (2) sentencia impuesta; (3) años cumplidos en cárcel; (4) licencia recomendada, y (5) licencia recibida. Así modificada, se confirma la decisión del TCA en los aspectos restantes.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Hernández Denton disintió con una opinión escrita. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita e hizo constar que confirmaría la sentencia del foro apelativo en su totalidad.

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

En el caso de autos, la Opinión del Tribunal resuelve que no procede mostrarle al doctor Nieves Falcón y al Comité Pro Derechos Humanos de Puerto Rico la totalidad de los expedientes solicitados y que, por el contrario, procede entregarle únicamente la data objetiva que ha sido recopilada por la Junta de Libertad Bajo Palabra.([1]) Por estimar que incide el Tribunal al resolver de esta forma, y que procede entregarle al recurrido los expedientes *en su totalidad*, disentimos.

I

El doctor Nieves Falcón y el Comité Pro Derechos Humanos de Puerto Rico (en adelante el Comité) presentaron un recurso de *mandamus* ante el Tribunal de Primera Instancia mediante el cual solicitaron que se ordenara a la

_____

([1]) Es decir: (1) el delito cometido; (2) la sentencia impuesta; (3) los años cumplidos en la cárcel; (4) la licencia recomendada, y (5) la licencia recibida.

Junta de Libertad Bajo Palabra (en adelante la Junta) permitirles examinar los expedientes de indultos, conmutaciones de sentencias y otras licencias que hubiesen sido otorgadas a la luz de las recomendaciones hechas por el Gobernador de Puerto Rico durante el período comprendido entre 1976 y 1984.

El doctor Nieves Falcón y el Comité adujeron que la información solicitada era pública y que se utilizaría para continuar con los trabajos de educación, tanto en Puerto Rico como en Estados Unidos, dirigidos a lograr la excarcelación de los presos políticos puertorriqueños que aún permanecen encarcelados en Estados Unidos y que no se acogieron a la amnistía otorgada en 1999 por el ex Presidente de Estados Unidos, el Sr. William Clinton. Sostuvieron que la información solicitada les proporcionaría elementos comparativos para saber quiénes habían sido liberados y bajo qué condiciones. Esta información les ayudaría a comprender cómo operaban los indultos y de ese modo colaborar en la liberación de los mencionados prisioneros políticos.

Por su parte, la Junta presentó dos mociones en las que solicitó la desestimación del recurso de *mandamus*. Alegó, por un lado, que lo solicitado era un asunto de la exclusiva jurisdicción del Gobernador, y que era a éste a quien se le tenía que hacer la petición de acceso a la información. Alegó, por otro lado, que la Junta no estaba obligada a presentar los documentos solicitados por ser éstos confidenciales, a la luz del Art. 7 de la Ley Orgánica de la Junta de Libertad Bajo Palabra, Ley Núm. 118 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. sec. 1507, que dispone así:

> Toda la información obtenida por la Junta o por alguno de sus funcionarios o empleados, en el desempeño de sus deberes oficiales será de carácter confidencial y no podrá ser divulgada revelando el nombre del confinado en forma alguna, excepto para propósitos directamente relacionados con la administración de la justicia en casos criminales, o cuando, comprobado por la Junta que existe un interés legítimo en la información

solicitada, medie el consentimiento voluntario y por escrito del confinado o liberado afectado por la divulgación o el de la persona que tenga al confinado o liberado bajo su custodia legal por estar éste incapacitado para otorgar tal consentimiento.

Luego de celebrar la vista correspondiente, el Tribunal de Primera Instancia dictó sentencia y declaró con lugar el auto de *mandamus* solicitado. En esta sentencia dictó la orden siguiente:

Declaramos ha lugar la demanda de autos y conforme a ello dictamos auto de *mandamus* mediante el cual ordenamos a la Junta de Libertad Condicional mostrar a la parte demandante los expedientes de conmutaciones e indultos que custodia y que fueran conferidos por el entonces gobernador de Puerto Rico, Lcdo. Carlos Romero Barceló, durante el período de 1976 a 1984.

Expresó, además, que de esos expedientes se diseñaría un programa, a manera de lista, para entregar exclusivamente la siguiente información: (1) delito cometido; (2) sentencia; (3) años cumplidos; (4) licencia recomendada; (5) licencia recibida.

La sentencia dispuso, por último, que no se informaría el nombre del convicto o convicta, y dictó una orden protectora permanente, so pena de desacato, para asegurar que no se revelaría la información obtenida, excepto para el fin reclamado y autorizado.[2]

Inconforme, la Junta acudió ante el Tribunal de Circuito de Apelaciones para aducir que incidió el Tribunal de Primera Instancia al ordenar a la Junta que mostrara los expedientes en cuestión a pesar de que contienen información confidencial. El Tribunal de Circuito de Apelaciones, por su parte, confirmó la decisión del foro de instancia.

---

[2] El Tribunal de Primera Instancia concluyó que los informes de recomendación del Gobernador a la Junta de Libertad Bajo Palabra (Junta) no contenían información confidencial, sino que se trataba de un formulario en el cual no estaban las ideas, las anotaciones o los procesos deliberativos del Gobernador, según alegó la Junta.

Es de esta sentencia que recurre ante nos la Junta y solicita que se modifique la sentencia dictada por el foro apelativo para que se divulgue únicamente la data objetiva, a saber: (1) delito cometido; (2) sentencia; (3) años cumplidos; (4) licencia recomendada; (5) licencia recibida. Una mayoría de este Tribunal revoca la decisión del foro apelativo, en cuanto ordena mostrarle al recurrido los expedientes solicitados. Por estimar que la mayoría de este Tribunal incide al así resolver y que la sentencia del foro apelativo era esencialmente correcta, suscribo este disenso.

## II

Ya habíamos reconocido que en Puerto Rico existe el derecho de acceso a la información pública como corolario de los derechos de libertad de expresión, prensa y asociación, según consagrados en nuestra Constitución.

Como bien señalamos en *Dávila v. Superintendente de Elecciones*, 82 D.P.R. 264, 281 esc. 9 (1960):

> "No basta con que se reconozca meramente la importante justificación política de la libertad de información. Los ciudadanos de una sociedad que se gobierna a sí misma deben poseer el derecho legal de examinar e investigar cómo se conducen sus asuntos, *sujetos sólo a aquellas limitaciones que impone la más urgente necesidad pública*. Debe elevarse ese derecho a una posición de la más alta santidad si ha de constituir un baluarte contra un liderato insensible." (Énfasis en el original suprimido y énfasis suplido.)

Así, la libertad de acceso a información oficial garantiza la libre discusión de los asuntos de gobierno, lo que constituye uno de los pilares de un Estado democrático.

Reiteradamente hemos decretado que existe una estrecha relación entre la libertad de expresión y la libertad de información, ya que si los ciudadanos no están debidamente informados de la gestión pública, se verán impedidos de expresar su satisfacción o insatisfacción con las personas, las reglas y los procesos que les gobiernan por medio

del voto o de los procesos judiciales. Es por ello que el derecho a la información pública es *fundamental. Ortiz v. Dir. Adm. de los Tribunales,* 152 D.P.R. 161 (2000); *López Vives v. Policía de P.R.,* 118 D.P.R. 219 (1987); *Soto v. Srio. de Justicia,* 112 D.P.R. 477 (1982).

No obstante lo antes dicho, ello no significa que el derecho a información es absoluto. Así, el derecho de información puede ser limitado por el Estado *si existe un interés público apremiante que lo justifique.*

Ya antes habíamos señalado que un reclamo de confidencialidad por parte del Estado sólo puede prosperar en un número limitado de supuestos, a saber: (1) cuando una ley o un reglamento así específicamente lo declara; (2) cuando la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) cuando revelar la información puede lesionar derechos fundamentales de terceros; (4) cuando se trate de la identidad de un confidente bajo la Regla 32 de Evidencia, o (5) cuando sea información oficial conforme a la Regla 31 de Evidencia, 32 L.P.R.A. Ap. IV. Véase *Angueira v. J.L.B.P.,* 150 D.P.R. 10 (2000), modificado en *Angueira Navarro v. J.L.B.P.,* 151 D.P.R. 605 (2000).

Le corresponde al Estado probar precisa e inequívocamente la aplicabilidad de cualesquiera excepciones antes enunciadas. *No bastan meras generalizaciones.* De otro modo retrocederíamos los pasos avanzados a favor del derecho de acceso a la información gubernamental. *Santiago v. Bobb y El Mundo, Inc.,* 117 D.P.R. 153 (1986). Una vez el Estado invoque el reclamo de confidencialidad bajo uno de los supuestos antes mencionados, el examen de confidencialidad al cual deberá someterse ese reclamo dependerá de la excepción que invoque el Estado como fundamento frente al pedido de información.

Cuando el Gobierno invoca una ley o un reglamento como fundamento para negar al ciudadano acceso a información pública —como lo hace la Junta en el caso de ma-

rras— *la regulación debe satisfacer un escrutinio judicial estricto, que satisfaga los siguientes requisitos*: (1) caer dentro del poder constitucional del Gobierno; (2) propulsar un interés gubernamental apremiante; (3) que tal interés no está directamente relacionado con la supresión de libertad de expresión, y (4) que la restricción a la libertad de expresión no sea mayor de lo necesario para propulsar ese interés. *Angueira v. J.L.B.P.*, supra. A tenor con lo antes transcrito, para que el Estado pueda prevalecer tiene que demostrar la existencia de intereses apremiantes de mayor jerarquía que los valores protegidos por el derecho del ciudadano al acceso a la información.

A la luz de toda esta normativa, pasemos a discutir la controversia que tenemos ante nos.

## III

En el caso de autos, el doctor Nieves Falcón y el Comité solicitaron a la Junta que les permitiera examinar los expedientes de indultos, conmutaciones de sentencias y otras licencias otorgadas a la luz de recomendaciones hechas por el entonces gobernador, Lic. Carlos Romero Barceló, entre 1976 a 1984. Según señalaron los demandantes, la información solicitada se utilizaría para continuar con los trabajos dirigidos a lograr la excarcelación de los presos políticos puertorriqueños que aún permanecen recluidos en prisiones en Estados Unidos.

Al examinar el recurso de autos, tomamos conocimiento judicial de que el doctor Nieves Falcón es un intelectual de renombre y de alto prestigio en nuestro país dedicado a la investigación de las ciencias sociales, con un largo historial en esa disciplina. Ha publicado más de una docena de obras y su estatura intelectual es incuestionable.[3]

---

[3] Entre los libros publicados se encuentran los siguientes: (1) *Diagnóstico de Puerto Rico*, Río Piedras, Ed. Edil, 1970; (2) *La opinión pública y las aspiraciones de los puertorriqueños*, Río Piedras, Ed. Universitaria, 1970; (3) *Puerto Rico: Grito y*

Su petición, según alegó en su escrito ante nos, no guarda ningún interés en identificar personas, informantes o informes médicos o psicológicos. Más bien se reduce a las prácticas más comunes del análisis y la investigación científica. Su único interés es hallar información objetiva, y estima que sólo él o su representante entrenado puede examinar con detenimiento los referidos informes y sustraer la información que solicitan y autorizada por el foro de instancia. Más aún, conforme lo ordenado por el foro de instancia, el investigador no podrá dar un uso no autorizado a la información obtenida. Así, se ve protegido el interés del Estado, a la vez que se garantiza el derecho a la información pública del ciudadano común.

La Junta se opuso a la solicitud. Alegó, entre otras cosas, que los expedientes contienen información de carácter confidencial, cuya divulgación no es necesaria ni la permite el Art. 7 de la Ley Orgánica de la Junta de Libertad Bajo Palabra, *supra*. Sostiene, además, que el principio de confidencialidad recogido en ese artículo persigue proteger la independencia de criterio de la Junta y promover la participación ciudadana en el proceso evaluativo del confinado para determinar el grado de rehabilitación y ajuste terapéutico que alcanza el convicto, así como el riesgo que representaría a la seguridad pública otorgar la libertad condicional. Estimamos, contrario a una mayoría de esta Curia, que no le asiste la razón a la Junta.

Al invocar una ley como fundamento para negarle a los apelados la información pública que solicitan, procede examinar la validez de la ley o el reglamento a la luz de un escrutinio judicial estricto que satisfaga los requisitos previamente señalados, a saber: (1) caer dentro del poder constitucional del Gobierno; (2) *propulsar un interés gubernamental apremiante*; (3) que tal interés no está directamente relacionado con la supresión de libertad de ex-

*Mordaza*, Río Piedras, Librería Internacional, 1973, y (4) *La guerra que desconocemos: memoria fotográfica*, San Juan, Anda, 1998.

presión, y (4) que la restricción a la libertad de expresión no sea mayor de lo necesario para propulsar ese interés.

Al examinar detenida y objetivamente estos requisitos, concluimos que la Junta no ha probado precisa e inequívocamente la aplicación de la excepción, de forma que se le permita reclamar la confidencialidad de los expedientes en cuestión. A pesar de que la Junta invoca el Art. 7 de su ley orgánica como fundamento para exigir la confidencialidad de los expedientes antes mencionados, un análisis del recurso de marras nos lleva a la conclusión de que el Estado no ha cumplido con los requisitos exigidos.

La Junta no ha demostrado que existen intereses apremiantes de mayor jerarquía que los valores protegidos por el derecho ciudadano a tener acceso a información pública.(4) Por el contrario, lo único que afirma de manera general es que todos los expedientes solicitados contienen información confidencial, y que la independencia de criterio de la Junta y la participación ciudadana en el proceso evaluativo del confinado se verían afectados por la divulgación de esos expedientes. Nos parece que esas alegaciones no son suficientes para probar el interés apremiante del Estado de mantener esos documentos confidenciales.

Ante estas circunstancias, y a falta de un interés *apremiante* a favor de la confidencialidad, el reclamo del Estado cede a favor del interés de los apelados en la información requerida. Por las razones antes expuestas, estimamos que procede que se le permita a los peticionarios examinar los expedientes en cuestión y extraer la data objetiva solicitada y estipulada en el foro de instancia. En vista de que una mayoría de este Tribunal resuelve de otro modo, disentimos.

---

(4) Ausente este requisito, estimamos innecesario e improcedente discutir los restantes requisitos.