EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Petición para examinar informes de divulgación financiera y quejas del Hon. Manuel Acevedo Hernández | 2014 TSPR 88<br><br>191 DPR ____ |

Número del Caso: MC-2013-16

Fecha: 16 de julio de 2014

Peticionaria:

Sra. Ivette M. Sosa
Periodista de Telemundo de Puerto Rico

Materia: Resolución del Tribunal con Voto Particular de Conformidad

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Ex parte: | | |
|---|---|---|
| Hon. Manuel Acevedo Hernández | MC-2013-016 | |

RESOLUCIÓN

En San Juan, Puerto Rico, a 16 de julio de 2014.

El 17 de abril de 2013, la periodista de Telemundo de Puerto Rico, Sra. Ivette M. Sosa (periodista), compareció ante nos mediante carta y solicitó permiso para examinar y obtener copia de los informes de divulgación financiera presentados en los pasados 5 años por el suspendido Juez Superior Manuel Acevedo Hernández, el cual estaba asignado a los asuntos de lo criminal en la región judicial de Aguadilla. En su comparecencia, la periodista explicó que el Departamento de Noticias de Telemundo había estado transmitiendo unos reportajes en torno a un posible conflicto de interés o conducta impropia por parte del juez Acevedo Hernández. Estos estaban relacionados con una intervención policiaca durante la cual el juez Acevedo Hernández se encontraba como pasajero en un vehículo de motor propiedad del contador Lutgardo Acevedo López, el cual era conducido por el Sr. Ángel A. Román Badillo. Específicamente, la periodista indicó que cuando el señor Román Badillo fue detenido, el juez Acevedo Hernández intercedió para que éste no fuera procesado por manejar en estado de embriaguez. Para lograr esto, el juez Acevedo Hernández solicitó hablar con la Directora de la División de Patrullas de Carreteras de Aguadilla, Tnte. Lizzette Quintana; sin embargo, el señor Román Badillo fue citado para que compareciera al Tribunal de Aguadilla el pasado 23 de abril de 2013. Casualmente, el juez Acevedo Hernández presidió el proceso judicial, mediante el cual

el contador Acevedo López resultó absuelto de los cargos de homicidio negligente y embriaguez.

Por motivo de estos sucesos y de otras informaciones provistas por fuentes fidedignas de la periodista, entre las cuales se incluye el alegado obsequio de un vehículo Cadillac al juez Acevedo Hernández por parte del contador Acevedo López, es que se nos solicitaron los informes de divulgación financiera. La periodista adujo que éstos eran necesarios para adelantar su investigación en tanto le permitirían corroborar los vehículos y demás bienes que posee el juez Acevedo Hernández. Asimismo, nos solicitó que le proveyéramos acceso a las querellas presentadas contra éste.

Ante esta petición, el 9 de mayo de 2013, la Secretaria de este Tribunal procedió a enviarle una comunicación al juez Acevedo Hernández en la que incluyó la solicitud de la periodista y le otorgó 5 días para que se expresara sobre el particular. Empero, éste nunca compareció.

Transcurrido el término concedido, el 28 de mayo de 2013, emitimos una Resolución en la cual autorizamos que la periodista inspeccionara los informes custodiados en la Secretaría de este Tribunal. En cuanto a la solicitud de acceso a las quejas o querellas presentadas contra el juez Acevedo Hernández, la remitimos a la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales (OAT) para que su requerimiento fuese considerado de acuerdo a las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B. Es de conocimiento público que, posteriormente, el Negociado Federal de Investigaciones (FBI) comenzó una investigación contra el juez Acevedo Hernández y como consecuencia éste fue acusado criminalmente y suspendido de su cargo.

Así las cosas, el 4 de junio de 2014, la periodista recurrió nuevamente ante nos mediante una misiva en la que nos solicitó que se le permitiera grabar o fotocopiar la información a la que ya se le había otorgado acceso mediante la Resolución del 28 de mayo de 2013. Examinada la petición, el 27 de junio de 2014, otorgamos un término de 5 días para que tanto la Oficina de Asuntos Legales de la OAT como el juez Acevedo Hernández se expresaran sobre la solicitud de la periodista.

El 9 de julio de 2014, el juez Acevedo Hernández compareció y se opuso a que se accediera a lo solicitado. Para fundamentar su oposición, alegó que permitir la fotocopia de los informes incidía sobre los procesos de investigación administrativos que se están llevando a cabo en la OAT. En esencia, adujo que la información solicitada guarda relación con la investigación administrativa. Por

tanto, en la medida que la información fuese publicada sin que él tuviese la oportunidad de refutarla, se le estaría violando su debido proceso de ley. Además, informó que sus representantes legales están contemplando presentarle una querella a la periodista ante la Asociación de Periodistas de Puerto Rico, por acoso, persecución y hostigamiento.

Por su parte, la Directora de la Oficina de Asuntos Legales compareció mediante una misiva en la cual reiteró la normativa constitucional sobre el derecho de acceso a información pública y la reglamentación aplicable. Asimismo, sostuvo que conceder acceso a los informes de investigación financiera es una determinación discrecional de este Tribunal. Además, indicó que las investigaciones administrativas o disciplinarias que se estén llevando a cabo contra un juez no son un criterio a considerar para conceder o denegar el acceso a estos informes. En cuanto al caso particular de autos, concluyó que el proveer acceso a los informes en controversia no interfiere con las investigaciones que están siendo llevadas a cabo por la OAT. Por el contrario, la información que ha sido publicada por los medios de comunicación fue lo que precisamente originó la investigación en curso.

I

Para poder atender la solicitud de la periodista, procedemos a exponer las disposiciones constitucionales pertinentes.

Nuestro ordenamiento reconoce que ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley. Art. II, Sec. 7, Const. ELA, LPRA Tomo 1, ed. 2008, pág. 296. En su vertiente procesal, el debido proceso de ley garantiza que al momento de intervenir con la propiedad o libertad de un individuo, el Estado debe proveerle unas garantías mínimas. Picorelli López v. Depto. de Hacienda, 179 DPR 720, 735-736 (2010); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 DPR 881, 887-888 (1993). No obstante, para que esta protección constitucional entre en vigor ciertamente tiene que existir un interés con el cual el Estado vaya a interferir. Gónzalez Segarra et al. v. CFSE, 188 DPR 252, 278 (2013); Rivera Rodríguez & Co. v. Lee Stowell, etc, supra; Board of Regents Colleges v. Roth, 408 U.S. 564 (1972). Una vez se determina la existencia de tal interés, entonces procede establecer el procedimiento a seguir, siendo esencial que éste sea justo y equitativo.

Por otra parte, es indiscutible, y este Tribunal ha sido consecuente en así reconocerlo, que el derecho a la información pública es fundamental. Colón Cabrera v. Caribbean Petroleum, 170 DPR 582, 590 (2007); Ortiz v. Dir. Adm. de los Tribunales, 152 DPR 161, 175 (2000).

Ello, debido a que es un corolario necesario de los derechos de libertad de expresión, prensa y asociación promulgados en la sección 4 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico. Const. ELA, *supra*, pág. 296. Como sabemos, al ser parte de un sistema democrático de gobierno, es imperativo reconocer la necesidad de mantener informados a los ciudadanos de manera que éstos puedan fiscalizar adecuadamente la gestión gubernamental. De lo contrario, se les estaría coartando la libertad para expresar la satisfacción o insatisfacción con los procesos que le gobiernan. Ortiz v. Dir. Adm. de los Tribunales, *supra*; Nieves v. Junta, 160 DPR 97, 102 (2003).

No obstante, el derecho de acceso a la información pública no es absoluto ni ilimitado, sino que está sujeto a la más urgente necesidad pública. Soto v. Srio. de Justicia, 112 DPR 477 (1982). Es decir, puede ser limitado si el Estado demuestra un interés apremiante que así lo justifique. Por tanto, cuando el Estado solicita mantener la secretividad de la infomación pública es necesario aplicar un análisis de escrutinio judicial estricto. Ortiz v. Dir. Adm. de los Tribunales, *supra*. Para esto, se deberá analizar la totalidad de las circunstancias y en un balance estricto de intereses determinar si el reclamo del Estado responde a intereses de mayor jerarquía que los valores protegidos por el derecho ciudadano a la información. Nieves v. Junta, *supra*, pág. 104 (citando a Angueira v. J.L.B.P., 150 DPR 10, 27 (2000)); Noriega v. Gobernador, 130 DPR 919, 938 (1992)).

Cónsono con estas garantías constitucionales, el Código de Enjuiciamiento Civil establece que todo ciudadano, por el mero hecho de serlo, tiene el derecho de inspeccionar y sacar copias de cualquier documento público de Puerto Rico. 32 LPRA sec. 1781. Por consiguiente, cuando este acceso es denegado injustificadamente, al solicitante se le causa un daño claro, real y palpable, lo que le brinda legitimación activa para, al menos, poder reclamar que su derecho se ha visto obstaculizado. Ortiz v. Dir. Adm. de los Tribunales, *supra*, pág. 177.

Ahora bien, para poder reconocer el derecho de acceso a la información pública, es necesario que lo solicitado sea realmente información pública. Ortiz v. Dir. Adm. de los Tribunales, *supra*, pág. 176 (citando a Pueblo v. Tribunal Superior, 96 DPR 746, 755 (1968)). El Art. 1170 del Código Civil, 31 LPRA sec. 3271, establece que "[s]on documentos públicos los autorizados por un notario o empleado público competente, con las solemnidades requeridas por la ley". Por su parte, la Ley Núm. 5 de 8 de diciembre de 1955, 3 LPRA sec. 1001(b), define lo que es un documento público de la siguiente manera:

Es todo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de confomidad con lo dispuesto en la sec. 1002 de este título se haga conservar. . . permanentemente o temporalmente como prueba de las transacciones o por su valor legal.

Por consiguiente, para poder reconocer el derecho de acceso a la información pública que opera en nuestro ordenamiento es necesario que lo solicitado pueda ser clasificado como un documento público.

II

Luego de analizar las disposiciones constitucionales aplicables, resulta pertinente referirnos a las disposiciones estaturias y reglamentarias sobre el acceso al tipo de información solicitada. En primer lugar, acudimos a la Ley Núm. 1-2012, conocida como la Ley de Ética Gubernamental, 3 LPRA sec. 1854 *et seq*. Ésta se promulgó ante la necesidad de promover un servicio público íntegro en el que los intereses personales de los servidores públicos no sustituyan a los de la ciudadanía. En su Exposición de Motivos se estableció que la "Ley enmarca el compromiso y la obligación que tiene esta Asamblea Legislativa de mantener bajo estricto escrutinio la responsabilidad ética de nuestros servidores públicos, y de responder a los reclamos del Pueblo".

A tenor con esta política pública, el Subcapítulo V de la referida ley regula las presentaciones de los informes financieros por parte de los empleados públicos, incluyendo a los miembros de la Rama Judicial. 3 LPRA sec. 1858. En cuanto a la inspección y el acceso del público a los informes presentados por parte de los miembros de la Rama Judicial, el Art. 5.8 de la Ley Núm. 1-2012, 3 LPRA sec. 1858g(f), establece que estas solicitudes se regirán de acuerdo a lo dispuesto por el Reglamento que tuviese a bien adoptar este Tribunal.

A la luz de lo anterior, es pertinente referirnos a las disposiciones del *Reglamento Aplicable al Canon X de los Cánones de Ética Judicial sobre los Informes de Divulgación de Actividad Financiera de Jueces y otro personal de la Rama Judicial*[1], cuyo propósito es regular la

---

[1]Nótese que el Reglamento fue aprobado durante la vigencia de los Cánones de Ética Judicial de 1977, en donde el Canon X regulaba la presentación de los informes financieros por parte de los miembros de la Rama Judicial. No obstante, al aprobarse los Cánones de Ética Judicial de 2005, las disposiciones sobre los informes de divulgación

presentación anual de los informes de divulgación financiera. La Regla 9 del mencionado reglamento dispone lo relacionado a la accesibilidad del público a estos informes. En particular, establece que:

> (1) Los Informes finales de los y las jueces y funcionarios(as) estarán bajo la custodia del(la) Secretario(a) del Tribunal Supremo. Los y las jueces y funcionarios(as), <u>sua sponte</u>, podrán autorizar su disponibilidad y publicidad. Salvo esa autorización, el Tribunal Supremo permitirá la inspección y el acceso a los informes financieros únicamente cuando la persona demuestre un **interés legítimo** y la necesidad de dicha información para someter datos adicionales que revelen la posible violación al Canon X, a las disposiciones de ley u otros extremos pertinentes. Se suministrará, libre de costo, copia de los Informes finales cuando sean requeridos por las agencias gubernamentales como parte de una gestión oficial.

> . . . .

> (4) Toda **solicitud de examen y copia** de un Informe será precedida de una solicitud escrita, conteniendo lo siguiente:

>> (a) Nombre, dirección y ocupación del o de la solicitante.
>> (b) Nombre y dirección de la persona, organización o dependencia gubernamental para la cual solicita el Informe.
>> (c) Acreditación de interés legítimo y necesidad de dicha información que revele posible violación del Canon X y otros cánones pertinentes.
>> (d) Que el o la solicitante conoce las prohibiciones y restricciones en cuanto al uso del Informe. (Énfasis suplido)

Como vemos, la citada regla es diáfana en otorgar acceso a los informes financieros presentados por los jueces y funcionarios de la Rama Judicial. Por consiguiente, no procede argumentar que estos son confidenciales. Por el contrario, su divulgación está sujeta a esta reglamentación. En primer lugar, la regla
_____

financiera quedaron contenidas en el Canon 37 de los Cánones de Ética Judicial, 4 LPRA Ap. IV-B, C. 37. A pesar de estas enmiendas, el referido Reglamento continúa vigente. *Véase* Comentarios al Canon 37 de Ética Judicial, *Íd.*

permite que el funcionario autorice esta divulgación. Sin embargo, aun cuando esto no suceda, la regla autoriza al Pleno de este Tribunal a otorgar ese acceso cuando el peticionario demuestre que tiene un interés legítimo en obtener este tipo de información y que la misma va a contribuir con datos adicionales que demuestren posibles violaciones a los cánones, leyes u otros extremos pertinentes.

Es importante destacar que de la aludida regla se desprende que los informes podrán ser examinados y copiados. Es decir, la referida regla no contempla ninguna restricción para que éstos sean fotocopiados. Asimismo, tampoco vislumbramos una restricción en cuanto a quién puede acceder a los informes. En el inciso 4(b) expresamente se requiere el nombre de la persona, organización o dependencia gubernamental que solicita el informe. Por consiguiente, tampoco hay una limitación en cuanto al tipo de peticionario. Sin embargo, la regla solamente libera del costo de las copias de los informes a las dependencias gubernamentales que los solicitan como parte de una gestión oficial. De manera que cualquier otra persona u organización deberá previamente cancelar los aranceles correspondientes.

### III

En la petición que atendemos, la periodista nos solicitó revisar los informes de divulgación financiera presentados por el juez Acevedo Hernández durante los últimos 5 años con el propósito de adelantar una investigación sobre posibles violaciones éticas y legales cometidas por éste. Nótese que al conceder esta solicitud no estamos disponiendo de las quejas, querellas o investigaciones que están en curso en la OAT. Por el contrario, estamos concediendo el acceso a los informes financieros de un miembro de la Rama Judicial que están bajo la salvaguarda de la Secretaría de este Tribunal. Esto es distinguible a lo sucedido en Ortiz v. Dir. Adm. de los Tribunales, *supra*. En aquella ocasión establecimos que los expedientes que obran en la OAT como parte de un procedimiento disciplinario judicial estarían disponibles para el escrutinio público tan pronto haya una determinación de la Directora en cuanto a que la investigación es final y firme. Esto no es lo que hoy está en controversia ante nos.

Siendo así, no podemos avalar el reclamo que hace el juez Acevedo Hernández para oponerse a que los informes de divulgación financiera que sometió ante este Tribunal sean fotocopiados por la periodista. En su comparecencia, alega que esta divulgación viola el debido proceso de ley en la medida que no le permite confrontarse con la información que puede ser llevada a la palestra pública. Como

mencionamos, para que el reclamo sobre el debido proceso de ley prospere es necesario que el Estado esté interfiriendo con un derecho propietario o libertario del individuo. En la situación ante nuestra consideración, no existe tal derecho que active la protección constitucional. Por el contrario, se está permitiendo que se copie un documento público presentado por el juez Acevedo Hernández que está bajo la salvaguarda del Tribunal. En todo caso, aun cuando no es requerido por la reglamentación aplicable, hemos sido consecuentes en otorgarle un término al juez Acevedo Hernández para que éste se exprese en torno a los requerimientos que ha hecho la periodista desde su primera comparecencia.

Realizada esta distinción, y recalcando que no estamos interfiriendo con los procedimientos investigativos de la OAT, procedemos a analizar si en la solicitud que tenemos ante nuestra consideración se cumplen con los estándares requeridos por la Regla 9, *supra*. Como hemos descrito anteriormente, en la comunicación que nos dirigió la periodista se detallaron eventos y conductas llevadas a cabo por el juez Acevedo Hernández que contravienen los cánones que regulan la profesión jurídica. Por lo tanto, la periodista cumplió con el requisito reglamentario de demostrar un interés legítimo para solicitar información que revele nuevos datos sobre actuaciones contrarias a los cánones, las disposiciones de ley u otros extremos pertinentes. Ello, toda vez que no se trata de una solicitud en el vacío, sin fundamento o una expedición de pesca para obtener información de un miembro de la Rama Judicial. Por el contrario, es una petición fundamentada, la cual acompañó con la divulgación de la identidad de testigos con conocimiento personal de posible conducta antiética, lo cual ciertamente puede aportar datos adicionales que revelen otras actuaciones del juez Acevedo Hernández contrarias a nuestros cánones o leyes, lo cual eventualmente nos puede ayudar a ejercer nuestro poder disciplinario. Tanto es así que en la comunicación enviada por la Oficina de Asuntos Legales de la OAT se reconoce que la investigación administrativa que están llevando a cabo se originó precisamente por la información publicada en los medios de comunicación sobre la conducta del juez Acevedo Hernández.

IV

En virtud de los fundamentos expuestos, autorizamos a la periodista Ivette M. Sosa a fotocopiar la información que ya se le había permitido verificar personalmente y para la cual ha demostrado tener un interés legítimo. Lo anterior sujeto a que cancelen los aranceles correspondientes. Entendemos que ello, además, es cónsono con la política adoptada en el Plan Estratégico de la Rama

Judicial de Puerto Rico 2012-2015: Justicia y Servicio, en tanto nos encamina hacia la consecución de mayor transparencia, accesibilidad y compromiso con la excelencia que debe caracterizar a los procedimientos judiciales.

Publíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió un Voto particular de conformidad al cual se une el Juez Asociado señor Kolthoff Caraballo.

La Jueza Asociada señora Pabón Charneco concurre con la decisión del Tribunal de acceder a la petición de la periodista Ivette M. Sosa a los efectos de fotocopiar los informes de divulgación financiera del suspendido Juez Superior Manuel Acevedo Hernández. Ello debido a que este Tribunal le permitió acceso a la periodista para examinar los referidos informes y, en aquella ocasión, el suspendido Juez Superior Acevedo Hernández no objetó la petición de ésta. El Juez Asociado señor Martínez Torres se une a la expresión de la Jueza Asociada señora Pabón Charneco.

El Juez Asociado señor Rivera García proveería no ha lugar a la solicitud presentada por la periodista Ivette M. Sosa para grabar y/o fotocopiar los informes de divulgación financiera del suspendido Juez Manuel Acevedo Hernández. Esto porque al presente el señor Acevedo Hernández enfrenta un proceso criminal en la jurisdicción federal que involucra imputaciones concernientes, precisamente, a irregularidades relacionadas con sus intereses financieros. Por ello, la divulgación indiscriminada de los documentos solicitados podría incidir directamente sobre garantías tan básicas como la presunción de inocencia y el debido proceso de ley que debe cobijar a todo imputado de delito. El Juez Asociado señor Feliberti Cintrón proveería no ha lugar y se une a la expresión del Juez Asociado señor Rivera García.


                              Aida Ileana Oquendo Graulau
                           Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex parte:

Hon. Manuel Acevedo Hernández

MC-2013-016

Voto particular de conformidad emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ al cual se une el Juez Asociado SEÑOR KOLTHOFF CARABALLO

En San Juan, Puerto Rico, a 16 de julio de 2014.

Hemos alcanzado un peldaño adicional hacia el proceso reformista de mayor accesibilidad del Pueblo a la información en poder de la Rama Judicial. Por ello, estoy conforme con la decisión que hoy toma este Tribunal de permitir que la periodista Ivette Sosa, quien ha cumplido con todos los requisitos dispuestos en las normas aplicables, pueda fotocopiar determinados informes de divulgación financiera presentados por el suspendido Juez Superior Manuel Acevedo Hernández.

Sencillamente, una determinación en contrario no constituiría una decisión cónsona con las acciones certeras tomadas por la Rama Judicial, relacionadas con la situación particular que nos ocupa.

No puedo permanecer silente cuando se acude a la vital garantía de la presunción de inocencia, inaplicable a la singular situación administrativa ante nos, como escudo para que una periodista, que ha cumplido con todos los procedimientos y requisitos aplicables, no fotocopie la información solicitada. Bajo ese argumento, ¿acaso la presunción de inocencia no aplicaría también para evitar que un funcionario acusado por corrupción no pueda ser suspendido sumariamente o removido de su cargo como medida preventiva? Abrir esa dimensión nos alejaría de los pasos recientemente alcanzados por este Tribunal en el fortalecimiento de acceso a los documentos públicos en poder de la Rama Judicial. Peor aun, ataría más a las instituciones públicas y a la ciudadanía en la capacidad de reaccionar, prevenir y amortiguar el impacto de posibles actividades delictivas y corruptas.

Ante esa realidad, estoy conforme con el dictamen y los fundamentos contenidos en la Resolución emitida por este Tribunal.

Luis F. Estrella Martínez
Juez Asociado