RESOLUCIÓN
El 17 de abril de 2013, la periodista de Telemundo de Puerto Rico, Sra. Ivette M. Sosa (periodista), compareció ante nos mediante una carta y solicitó permiso para examinar y obtener copia de los informes de divulgación financiera presentados en los pasados 5 años por el suspendido juez superior Manuel Acevedo Hernández, el cual estaba asignado a los asuntos de lo criminal en la región judicial de Aguadilla. En su comparecencia, la periodista explicó que el Departamento de Noticias de Telemundo había estado transmitiendo unos reportajes en torno a un posible conflicto de interés o conducta impropia por parte del juez Acevedo Hernández. Estos reportajes estaban relacionados con *411 una intervención policiaca durante la cual el juez Acevedo Hernández se encontraba como pasajero en un vehículo de motor propiedad del contador Lutgardo Acevedo López y conducido por el Sr. Ángel A. Román Badillo. Específicamente, la periodista indicó que cuando el señor Román Badillo fue detenido, el juez Acevedo Hernández intercedió para que éste no fuera procesado por manejar en estado de embriaguez. Para lograr esto, el juez Acevedo Hernández solicitó hablar con la Directora de la División de Patrullas de Carreteras de Aguadilla, Tnte. Lizzette Quintana. Sin embargo, el señor Román Badillo fue citado para que compareciera al tribunal de Aguadilla el pasado 23 de abril de 2013. Casualmente, el juez Acevedo Hernández presidió el proceso judicial mediante el cual el contador Acevedo López resultó absuelto de los cargos de homicidio negligente y embriaguez.
Por motivo de estos sucesos y de otras informaciones provistas por fuentes fidedignas de la periodista —entre las cuales se incluye el alegado obsequio de un vehículo Cadillac al juez Acevedo Hernández por parte del contador Acevedo López— es que se nos solicitaron los informes de divulgación financiera. La periodista adujo que estos eran necesarios para adelantar su investigación en tanto le permitirían corroborar los vehículos y demás bienes que posee el juez Acevedo Hernández. Asimismo, nos solicitó que le proveyéramos acceso a las querellas presentadas contra este.
Ante esta petición, el 9 de mayo de 2013 la Secretaria de este Tribunal procedió a enviarle una comunicación al juez Acevedo Hernández en la que incluyó la solicitud de la periodista y le otorgó 5 días para que se expresara sobre el particular. Empero, el juez Acevedo Hernández nunca compareció.
El 28 de mayo de 2013, transcurrido el término concedido, emitimos una Resolución en la cual autorizamos que la periodista inspeccionara los informes custodiados en la *412 Secretaría de este Tribunal. En cuanto a la solicitud de acceso a las quejas o querellas presentadas contra el juez Acevedo Hernández, remitimos a la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales (OAT) tal solicitud para que su requerimiento fuese considerado de acuerdo con las Reglas de Disciplina Judicial, 4 LPRAAp. XV-B. Es de conocimiento público que, posteriormente, el Negociado Federal de Investigaciones (FBI) comenzó una investigación contra el juez Acevedo Hernández y, como consecuencia, este fue acusado criminalmente y suspendido de su cargo.
Así las cosas, el 4 de junio de 2014 la periodista recurrió nuevamente ante nos mediante una misiva en la que nos solicitó que se le permitiera grabar o fotocopiar la información a la que ya se le había otorgado acceso mediante la Resolución del 28 de mayo de 2013. Examinada la petición, el 27 de junio de 2014 otorgamos un término de 5 días para que, tanto la Oficina de Asuntos Legales de la OAT como el juez Acevedo Hernández se expresaran sobre la solicitud de la periodista.
El 9 de julio de 2014, el juez Acevedo Hernández compareció y se opuso a que se accediera a lo solicitado. Para fundamentar su oposición, alegó que permitir la fotocopia de los informes incidía sobre los procesos de investigación administrativos que se están llevando a cabo en la OAT. En esencia, adujo que la información solicitada guarda relación con la investigación administrativa. Por lo tanto, en la medida que la información se publicase sin que él tuviese la oportunidad de refutarla, se le violaría su derecho a un debido proceso de ley. Además, informó que sus representantes legales contemplaban presentar una querella a la periodista ante la Asociación de Periodistas de Puerto Rico por acoso, persecución y hostigamiento.
Por su parte, la Directora de la Oficina de Asuntos Legales de la OAT compareció mediante una misiva, en la cual reiteró la normativa constitucional sobre el derecho de *413 acceso a información pública y la reglamentación aplicable. Asimismo, sostuvo que conceder acceso a los informes de investigación financiera es una determinación discrecional de este Tribunal. Además, indicó que las investigaciones administrativas o disciplinarias que se lleven a cabo contra un juez no son un criterio a considerar para conceder o denegar el acceso a estos informes. En cuanto al caso particular de autos, concluyó que el proveer acceso a los informes en controversia no interfiere con las investigaciones que la OAT lleve a cabo. Por el contrario, la información que ha sido publicada por los medios de comunicación fue lo que precisamente originó la investigación en curso.
I
Para poder atender la solicitud de la periodista, procedemos a exponer las disposiciones constitucionales pertinentes.
Nuestro ordenamiento reconoce que ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 296. En su vertiente procesal, el debido proceso de ley garantiza que al momento de intervenir con la propiedad o libertad de un individuo, el Estado debe proveerle unas garantías mínimas. Picorelli López v. Depto. de Hacienda, 179 DPR 720, 735-736 (2010); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 DPR 881, 887-888 (1993). No obstante, para que esta protección constitucional entre en vigor ciertamente tiene que existir un interés con el cual el Estado vaya a interferir. González Segarra et al. v. CFSE, 188 DPR 252, 278 (2013); Rivera Rodríguez & Co. v. Lee Stowell, etc, supra; Board of Regents Colleges v. Roth, 408 US 564 (1972). Una vez se determina la existencia de tal interés, entonces procede establecer el procedimiento justo y equitativo a seguir.
Por otra parte, es indiscutible —y este Tribunal ha sido *414 consecuente en reconocerlo así— que el derecho a la información pública es fundamental. Colón Cabrera v. Caribbean Petroleum, 170 DPR 582, 590 (2007); Ortiz v. Dir. Adm. de los Tribunales, 152 DPR 161, 175 (2000). Ello debido a que es un corolario de los derechos de libertad de expresión, prensa y asociación promulgados en la See. 4 del Art. II de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, Const. ELA, supra, pág. 285. Como sabemos, al ser parte de un sistema democrático de gobierno, es imperativo reconocer la necesidad de mantener informados a los ciudadanos, de manera que estos puedan fiscalizar adecuadamente la gestión gubernamental. De lo contrario, se les coartaría la libertad para expresar la satisfacción o insatisfacción con los procesos que le gobiernan. Ortiz v. Dir. Adm. de los Tribunales, supra; Nieves v. Junta, 160 DPR 97, 102 (2003).
No obstante, el derecho de acceso a la información pública no es absoluto ni ilimitado, sino que está sujeto a la más urgente necesidad pública. Soto v. Srio. de Justicia, 112 DPR 477 (1982). Es decir, puede ser limitado si el Estado demuestra un interés apremiante que así lo justifique. Por lo tanto, cuando el Estado solicita mantener la secretividad de la infomación pública es necesario aplicar un análisis de escrutinio judicial estricto. Ortiz v. Dir. Adm. de los Tribunales, supra. Para esto se deberá analizar la totalidad de las circunstancias y, en un balance estricto de intereses, determinar si el reclamo del Estado responde a intereses de mayor jerarquía que los valores protegidos por el derecho ciudadano a la información. Nieves v. Junta, supra, pág. 104 (citando a Angueira v. J.L.B.P., 150 DPR 10, 27 (2000)); Noriega v. Gobernador, 130 DPR 919, 938 (1992).
Cónsono con estas garantías constitucionales, el Código de Enjuiciamiento Civil establece que todo ciudadano, por el mero hecho de serlo, tiene el derecho de inspeccionar y sacar copias de cualquier documento público de Puerto Rico. 32 *415 LPRA sec. 1781. Por consiguiente, cuando este acceso se deniega injustificadamente, se causa un daño claro, real y palpable al solicitante, lo que le brinda legitimación activa para, al menos, poder reclamar que su derecho se ha visto obstaculizado. Ortiz v. Dir. Adm. de los Tribunales, supra, pág. 177.
Ahora bien, para poder reconocer el derecho de acceso a la información pública es necesario que lo solicitado sea realmente información pública. Ortiz v. Dir. Adm. de los Tribunales, supra, pág. 176 (citando a Pueblo v. Tribunal Superior, 96 DPR 746, 755 (1968)). El Art. 1170 del Código Civil, 31 LPRA see. 3271, establece que “[s]on documentos públicos los autorizados por un notario o empleado público competente, con las solemnidades requeridas por la ley”. Por su parte, la Ley Núm. 5 de 8 de diciembre de 1955 (3 LPRA sec. 1001(b)), define lo que es un documento público de la manera siguiente:
[...] Es todo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de confomidad con lo dispuesto en la see. 1002 de este título se haga conservar [...] permanentemente o temporalmente como prueba de las transacciones o por su valor legal.
Por consiguiente, para poder reconocer el derecho de acceso a la información pública que opera en nuestro ordenamiento es necesario que lo solicitado pueda clasificarse como un documento público.
II
Luego de analizar las disposiciones constitucionales aplicables, resulta pertinente referirnos a las disposiciones estatutarias y reglamentarias sobre el acceso al tipo de información solicitada. En primer lugar, acudimos a la Ley Núm. 1-2012, conocida como la Ley de Ética Gubernamen *416 tal de Puerto Rico de 2011 (3 LPRA see. 1854 et seq.). Esta ley se promulgó ante la necesidad de promover un servicio público íntegro en el que los intereses personales de los servidores públicos no sustituyan a los de la ciudadanía. En su Exposición de Motivos se estableció que la “Ley enmarca el compromiso y la obligación que tiene esta Asamblea Legislativa de mantener bajo estricto escrutinio la responsabilidad ética de nuestros servidores públicos, y de responder a los reclamos del Pueblo”. 2012 (Parte 1) Leyes de Puerto Rico 20.
A tenor con esta política pública, el Subcapítulo V de la referida ley regula las presentaciones de los informes financieros por parte de los empleados públicos, incluyendo a los miembros de la Rama Judicial. 3 LPRA sec. 1858(a). En cuanto a la inspección y el acceso del público a los informes presentados por parte de los miembros de la Rama Judicial, el Art. 5.8 de la Ley Núm. 1-2012 (3 LPRA see. 1858g(f)), establece que estas solicitudes se regirán de acuerdo con lo dispuesto por el Reglamento que tuviese a bien adoptar este Tribunal.
A la luz de lo anterior, es pertinente referirnos a las disposiciones del Reglamento Aplicable al Canon X de los Cánones de Ética Judicial sobre los Informes de Divulgación de Actividad Financiera de Jueces y Otro Personal de la Rama Judicial,(1) cuyo propósito es regular la presentación anual de los informes de divulgación financiera. La Regla 9 del mencionado reglamento dispone lo relacionado a la accesibilidad del público a estos informes. En particular, establece que:
(1) Los Informes finales de los y las jueces y funcionarios(as) *417 estarán bajo la custodia del(la) Secretario(a) del Tribunal Supremo. Los y las jueces y funcionarios(as), sua sponte, podrán autorizar su disponibilidad y publicidad. Salvo esa autorización, el Tribunal Supremo permitirá la inspección y el acceso a los informes financieros únicamente cuando la persona demuestre un interés legítimo y la necesidad de dicha información para someter datos adicionales que revelen la posible violación al Canon X, a las disposiciones de ley u otros extremos pertinentes. Se suministrará, libre de costo, copia de los Informes finales cuando sean requeridos por las agencias gubernamentales como parte de una gestión oficial.
(4) Toda solicitud de examen y copia de un Informe será precedida de una solicitud escrita, conteniendo lo siguiente:
(a) Nombre, dirección y ocupación del o de la solicitante.
(b) Nombre y dirección de la persona, organización o dependencia gubernamental para la cual solicita el Informe.
(c) Acreditación de interés legítimo y necesidad de dicha información que revele posible violación del Canon X y otros cánones pertinentes.
(d) Que el o la solicitante conoce las prohibiciones y restricciones en cuanto al uso del Informe. (Enfasis suplido). Memorando Núm. 248, Año fiscal 1997-1998, Oficina de Administración de los Tribunales, 27 de marzo de 1998, págs. 9-11.
Como vemos, la citada regla es diáfana en otorgar acceso a los informes financieros presentados por los jueces y funcionarios de la Rama Judicial. Por consiguiente, no pro-cede argumentar que estos son confidenciales. Por el contrario, su divulgación está sujeta a esta reglamentación. En primer lugar, la regla permite que el funcionario auto-rice esta divulgación. Sin embargo, aun cuando esto no suceda, la regla autoriza al Pleno de este Tribunal a otorgar ese acceso cuando el peticionario demuestre que tiene un interés legítimo en obtener este tipo de información y que tal información va a contribuir con datos adicionales que demuestren posibles violaciones a los cánones, las leyes u otros extremos pertinentes.
Es importante destacar que de la aludida regla se deduce que los informes podrán examinarse y copiarse. Es decir, la referida regla no contempla ninguna restricción para que sean fotocopiados. Asimismo, tampoco vislumbra *418 xnos una restricción en cuanto a quién puede acceder a los informes. En el inciso 4(b) expresamente se requiere el nombre de la persona, organización o dependencia gubernamental que solicita el informe. Por consiguiente, tampoco hay una limitación en cuanto al tipo de peticionario. Sin embargo, la regla solamente libera del costo de las copias de los informes a las dependencias gubernamentales que los solicitan como parte de una gestión oficial. Así, cualquier otra persona u organización deberá cancelar previamente los aranceles correspondientes.
III
En la petición que atendemos, la periodista nos solicitó los informes de divulgación financiera que el juez Acevedo Hernández presentó durante los últimos 5 años con el propósito de revisarlos y adelantar una investigación sobre posibles violaciones éticas y legales cometidas por este. Nótese que al conceder esta solicitud no estamos disponiendo de las quejas, querellas o investigaciones que están en curso en la OAT. Por el contrario, concedemos el acceso a los informes financieros de un miembro de la Rama Judicial que están bajo la salvaguarda de la Secretaría de este Tribunal. Esto se distingue de lo sucedido en Ortiz v. Dir. Adm. de los Tribunales, supra. En aquella ocasión establecimos que los expedientes que obran en la OAT como parte de un procedimiento disciplinario judicial estarían disponibles para el escrutinio público tan pronto haya una determinación de la Directora en cuanto a que la investigación es final y firme. Esto no es lo que hoy está en controversia ante nos.
Siendo así, no podemos avalar el reclamo que hace el juez Acevedo Hernández para oponerse a que la periodista fotocopie los informes de divulgación financiera que sometió ante este Tribunal. En su comparecencia, alega que esta divulgación viola el debido proceso de ley en la medida *419 que no le permite confrontarse con la información que puede llevarse a la palestra pública. Como mencionamos, para que el reclamo sobre el debido proceso de ley prospere es necesario que el Estado interfiera con un derecho propietario o libertario del individuo. En la situación ante nuestra consideración, no existe tal derecho que active la protección constitucional. Por el contrario, se está permitiendo que se copie un documento público presentado por el juez Acevedo Hernández que está bajo la salvaguarda del Tribunal. En todo caso, aun cuando la reglamentación aplicable no lo requiere, hemos sido consecuentes en otorgarle un término al juez Acevedo Hernández para que se exprese en torno a los requerimientos que ha hecho la periodista desde su primera comparecencia.
Realizada esta distinción, y recalcando que no interferimos con los procedimientos investigativos de la OAT, procedemos a analizar si en la solicitud que tenemos ante nuestra consideración se cumplen con los estándares requeridos por la referida Regla 9, supra. Como hemos descrito anteriormente, en la comunicación que nos dirigió la periodista se detallaron eventos y conductas llevadas a cabo por el juez Acevedo Hernández que contravienen los cánones que regulan la profesión jurídica. Por lo tanto, la periodista cumplió con el requisito reglamentario de demostrar un interés legítimo para solicitar información que revele nuevos datos sobre actuaciones contrarias a los cánones, a las disposiciones de ley o a otros extremos pertinentes. Ello toda vez que no se trata de una solicitud en el vacío, sin fundamento, o una expedición de pesca para obtener información de un miembro de la Rama Judicial. Por el contrario, es una petición fundamentada, la cual acompañó con la divulgación de la identidad de testigos con conocimiento personal de una posible conducta antiética, lo cual ciertamente puede aportar datos adicionales que revelen otras actuaciones del juez Acevedo Hernández contrarias a nuestros cánones o leyes. Asimismo, *420 podría ayudarnos eventualmente a ejercer nuestro poder disciplinario. Tanto es así, que en la comunicación enviada por la Oficina de Asuntos Legales de la OAT se reconoce que la investigación administrativa que están llevando a cabo se originó precisamente por la información publicada en los medios de comunicación sobre la conducta del juez Acevedo Hernández.
IV
En virtud de los fundamentos expuestos, autorizamos a la periodista Ivette M. Sosa a fotocopiar la información que ya se le había permitido verificar personalmente y para la cual ha demostrado tener un interés legítimo. Esto estará sujeto a que cancele los aranceles correspondientes. Entendemos que ello, además, es cónsono con la política adoptada en el Plan Estratégico de la Rama Judicial de Puerto Rico 2012-2015: Justicia y Servicio, en tanto nos encamina hacia la consecución de mayor transparencia, accesibilidad y compromiso con la excelencia que debe caracterizar a los procedimientos judiciales.

Publíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Estrella Martínez emitió un voto particular de conformidad, al cual se unió el Juez Asociado Señor Kolthoff Caraballo.
La Jueza Asociada Señora Pabón Charneco concurrió con la decisión del Tribunal de acceder a la petición de la periodista Ivette M. Sosa, a los efectos de fotocopiar los informes de divulgación financiera del suspendido juez superior Manuel Acevedo Hernández. Ello debido a que este Tribunal le permitió acceso a la periodista para examinar los referidos informes y, en aquella ocasión, el suspendido juez superior Acevedo Hernández no objetó la petición de esta.
*421 El Juez Asociado Señor Martínez Torres se unió a la expresión de la Jueza Asociada Señora Pabón Charneco.
El Juez Asociado Señor Rivera García proveería “no ha lugar” a la solicitud presentada por la periodista Ivette M. Sosa para grabar o fotocopiar los informes de divulgación financiera del suspendido Juez Manuel Acevedo Hernández. Esto porque, al presente, el señor Acevedo Hernández enfrenta un proceso criminal en la jurisdicción federal que involucra imputaciones concernientes, precisamente, a irregularidades relacionadas con sus intereses financieros. Por ello, la divulgación indiscriminada de los documentos solicitados podría incidir directamente sobre garantías tan básicas como la presunción de inocencia y el debido proceso de ley que debe cobijar a todo imputado de delito.
El Juez Asociado Señor Feliberti Cintrón proveería “no ha lugar” y se unió a la expresión del Juez Asociado Señor Rivera García.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

Voto particular de conformidad emitido por el
Juez Asociado Señor Estrella Martínez, al cual se une el Juez Asociado Señor Kolthoff Caraballo.
Hemos alcanzado un peldaño adicional hacia el proceso reformista de mayor accesibilidad del Pueblo a la información en poder de la Rama Judicial. Por ello, estoy conforme con la decisión que hoy toma este Tribunal de permitir que la periodista Ivette Sosa, quien ha cumplido con todos los requisitos dispuestos en las normas aplicables, pueda fotocopiar determinados informes de divulgación financiera presentados por el suspendido juez superior Manuel Acevedo Hernández.
Sencillamente, una determinación en contrario no constituiría una decisión cónsona con las acciones certeras to *422 madas por la Rama Judicial, relacionadas con la situación particular que nos ocupa.
No puedo permanecer silente cuando se acude a la vital garantía de la presunción de inocencia, inaplicable a la singular situación administrativa ante nos, como escudo para que una periodista, que ha cumplido con todos los procedimientos y requisitos aplicables, no fotocopie la información solicitada. Bajo ese argumento, ¿acaso la presunción de inocencia no aplicaría también para evitar que un funcionario acusado por corrupción no pueda ser suspendido sumariamente o removido de su cargo como medida preventiva? Abrir esa dimensión nos alejaría de los pasos recientemente alcanzados por este Tribunal en el fortalecimiento de acceso a los documentos públicos en poder de la Rama Judicial. Peor aún, ataría más a las instituciones públicas y a la ciudadanía en la capacidad de reaccionar, prevenir y amortiguar el impacto de posibles actividades delictivas y corruptas.
Ante esa realidad, estoy conforme con el dictamen y los fundamentos contenidos en la Resolución emitida por este Tribunal.

 Nótese que este reglamento se aprobó durante la vigencia de los Cánones de Ética Judicial de 1977, en donde el Canon X regulaba la presentación de los informes financieros por parte de los miembros de la Rama Judicial. No obstante, al aprobarse los Cánones de Ética Judicial de 2005, las disposiciones sobre los informes de divulgación financiera quedaron contenidas en el Canon 37 de Ética Judicial, 4 LPRAAp. IV-B. A pesar de estas enmiendas, el referido reglamento continúa vigente. Véase Comentarios al Canon 37 de Ética Judicial, id.