Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| CENTRO DE PERIODISMO INVESTIGATIVO, INC.<br><br>Apelada<br><br>v.<br><br>COMPAÑÍA DE TURISMO DE PUERTO RICO<br><br>Apelante | KLAN202400016 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: SJ2023CV10892 (907)<br><br>Sobre: Recurso Especial de Acceso a la Información Pública (Ley núm. 141-2019) |

Panel integrado por su presidente, el juez Sánchez Ramos, el juez Pagán Ocasio, el juez Marrero Guerrero y la jueza Boria Vizcarrondo.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de enero de 2024.

El Tribunal de Primera Instancia ("TPI") ordenó a la Compañía de Turismo de Puerto Rico ("Turismo") entregarle al Centro de Periodismo Investigativo, Inc. (el "CPI" o "Centro"), una lista de la siguiente información relacionada con cada una de las propiedades en Puerto Rico registradas para operar como alquiler a corto plazo: dirección física, nombre comercial y nombre del propietario del inmueble. Concluimos que actuó correctamente el TPI, pues la información solicitada no ha sido designada como confidencial.

I.

El 15 de mayo de 2023, el Sr. Luis Joel Méndez González (el "Periodista") le envió un correo electrónico a la Sa. Leslie Díaz López, Directora de Relaciones Públicas y Comunicaciones de Turismo, mediante el cual solicitó una lista con la información antes mencionada. Al no recibir respuesta, el Periodista reenvió su solicitud original el 25 de mayo, con un mensaje de seguimiento. Tampoco recibió respuesta. El 5 de junio, el Periodista reiteró su petición de información a la Sa. Ana Leticia Vélez Santiago,

Ayudante Especial del Director Ejecutivo de Turismo (la "Ayudante").

El 12 de junio, la Ayudante respondió que la información podía entregarse en totales, pero no en la manera en que los solicitó el Periodista porque la información de "récord contributivo ... no puede ser divulgada".[1] Turismo hizo referencia al Artículo 52 de la Ley 272-2003 (la "Ley 272"), conocida como Ley del Impuesto sobre el Canon por Ocupación de Habitación del Estado Libre Asociado de Puerto Rico, 13 LPRA sec. 2272p, así como al Artículo 14 del Reglamento Núm. 8395 de 13 de octubre de 2013, Reglamento para la Fiscalización y Cobro del Impuesto sobre el Canon por Ocupación de Habitación y sus Procedimientos Adjudicativos (el "Reglamento").

Ese mismo día, el Periodista le envió a la Ayudante un mensaje de parte de la Sa. Wilma Maldonado Arrigoitia, Directora Editorial del CPI. En síntesis, aseveró que la información solicitada no era de índole contributiva. Ante la falta de respuesta, el 15 de junio, el Periodista envió un mensaje de seguimiento a la Ayudante.

Subsiguientemente, a raíz de una conversación telefónica, el 16 de junio, la Ayudante cursó al Periodista una tabla en formato Excel con datos agregados sobre "estadísticas de arrendamiento a corto plazo" y subrayó que Turismo lo que mantiene es "un registro de hosteleros por lo cual por cada número de hostelero registrado pueden existir una o varias propiedades a su nombre".

Se acompañó la tabla en formato Excel de una misiva suscrita por el Sr. Gustavo González Serrano, Principal Oficial Financiero de Turismo, en la cual esbozó varias razones para denegar la solicitud de información del CPI. Turismo sostuvo que la información solicitada era de carácter contributivo y, por tanto, confidencial. Resaltó que, para cumplir con el canon por ocupación de habitación

---

[1] Apéndice IX del recurso, pág. 93.

(la "Contribución"), todo hostelero debe someter una "Declaración", la cual, según el Reglamento, sólo podrá inspeccionarse por "partes interesadas".

En respuesta, el 11 de octubre, el Centro, a través de su representación legal, le envió una carta por correo electrónico a Turismo. En la misma, se afirmó que el Periodista no solicitaba la entrega de las "Declaraciones", sino información pública, no de naturaleza contributiva. En vista de lo cual, requirió la entrega de la información solicitada en o antes del 25 de octubre.

Al no recibir la información solicitada, el 21 de noviembre, el CPI presentó ante el TPI la acción de referencia (*Recurso Especial de Acceso a la Información Pública*, o el "Recurso"), ello al amparo del procedimiento expedito que provee la Ley 141-2019. El Centro alegó que Turismo se había rehusado a proveer un listado de todas las propiedades disponibles para alquiler a corto plazo (*short term rentals*), junto con las direcciones físicas correspondientes, sus nombres comerciales y los nombres de los propietarios. Aclaró que no solicitaban las declaraciones que someten las personas hosteleras relacionada con la Contribución.

El 22 de noviembre, el TPI le ordenó a Turismo comparecer en el término de diez (10) días. El 8 de diciembre, Turismo presentó una *Contestación a Demanda*. En síntesis, planteó que no podía proveer lo que catalogó como información confidencial, toda vez que la Ley 272 establece el deber de Turismo de salvaguardar la confidencialidad de las Declaraciones, pagos y contribuyentes. A pesar de lo anterior, informó que le proveyó al CPI toda la información que consideró que no era confidencial.

El 13 de diciembre, el TPI celebró una vista por videoconferencia. De acuerdo con la *Minuta* que recoge las incidencias de la vista, al TPI le quedó claro que la información solicitada por el CPI es la lista de propiedades registradas para

operar como alquileres a corto plazo, direcciones físicas, nombres comerciales y nombres de sus propietarios, no información contributiva, ni de ingresos o deudas. Así pues, escuchados los argumentos de las partes, el TPI dio por sometido el asunto e indicó que lo resolvería y emitiría el correspondiente dictamen.

El 19 de diciembre, el TPI notificó una *Resolución* (el "Dictamen"), mediante el cual ordenó a Turismo entregar la información solicitada por el CPI. El TPI razonó que la información solicitada no tenía el mismo alcance personal que la información incluida en una planilla de contribución sobre ingresos. El TPI resaltó que la información solicitada no revela patrones, estilos de vida o la situación económica de alguna persona, por lo que no era información contributiva ni confidencial. Concluyó que la información requerida por el CPI es pública y que Turismo "no descargó su responsabilidad probatoria para demostrar la aplicabilidad en este caso de alguna de las excepciones reconocidas en el derecho constitucional de acceso a información pública, como lo sería un reclamo de confidencialidad y/o un interés apremiante sobre esta".

Inconforme, el 21 de diciembre, Turismo solicitó la reconsideración del Dictamen. En igual fecha, el CPI interpuso una *Solicitud de Orden de Desacato y Cumplimiento de Resolución Final*. Mediante una *Resolución* dictada y notificada el propio 21 de diciembre, el TPI declaró *No Ha Lugar* la solicitud de reconsideración de Turismo. Además, el 22 de diciembre, el TPI notificó una *Orden Enmendada* en la cual señaló una vista de desacato para el 9 de enero de 2024.

En desacuerdo, el 8 de enero de 2024, Turismo interpuso el recurso que nos ocupa; arguye que el TPI cometió los siguientes tres (3) errores:

1. Respetuosamente planteamos que erró y abusó de su discreción el Honorable Tribunal de Primera Instancia al declarar "Ha Lugar" el recurso de epígrafe pasando por alto lo dispuesto en el Art. 52 de la Ley 272, *ante* y el Art. 14 del Reglamento 8395 de la CTPR.

2. Respetuosamente planteamos que erró y abusó de su discreción el Honorable Tribunal de Primera Instancia al concluir que la Compañía de Turismo de Puerto Rico no cumplió con el peso de la prueba.

3. Respetuosamente plantemos que erró y abusó de su discreción el Honorable Tribunal de Primera Instancia al proveer un remedio que no es contemplado por la Ley 141, *ante*, y en inobservancia con la Regla 21.3 y la Regla 59.5 de Procedimiento Civil.

Turismo acompañó su recurso con una *Urgente Moción en Auxilio de Jurisdicción para Paralizar Vista de Desacato*. Mediante una *Resolución* dictada el 8 de enero, denegamos la solicitud de paralización. A su vez, le concedimos al CPI un término a vencer el 12 de enero para presentar su alegato en oposición. El 12 de enero, el CPI presentó un *Escrito en Cumplimiento de Resolución y en Oposición a la Expedición del Recurso Presentado por la Compañía de Turismo de Puerto Rico*. Resolvemos[2].

## II.

Como cuestión de umbral, aclaramos que el recurso indicado para revisar ante este Tribunal el Dictamen es la apelación. El Centro plantea que, como el Artículo 9 de la Ley 141-2019, 3 LPRA sec. 9919, establece que el TPI resolverá este tipo de acción mediante una "resolución fundamentada", ello significa que el recurso aplicable es del *certiorari*. No obstante, la utilización de este término en la Ley 141-2019 no tiene el alcance que el Centro le adscribe.

En lo sustantivo, el Dictamen es equivalente a una sentencia final en un caso civil, la cual se revisa mediante apelación. Véase Regla 13(A) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap.

---

[2] Contrario a lo planteado por el Centro, no estamos ante un caso académico. Adviértase que el Centro nos ha planteado que Turismo aún no ha entregado la totalidad de la información que el TPI ordenó se les entregara. Ante la vigencia de esta controversia, el caso ante el TPI no ha concluido y la controversia entre las partes no se ha tornado académica.

XXII-B, R. 13(A). Si bien una "resolución u orden" del TPI se revisa mediante el recurso de *certiorari*, ordinariamente ello se refiere a dictámenes interlocutorios, que son los que el TPI emite a través de una resolución u orden. Regla 32(D) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 32(D).

Consideramos que todo dictamen final en una acción civil se revisa mediante el recurso de apelación, salvo que se haya consignado explícitamente que el dictamen final en cierto tipo de proceso se revisará mediante un recurso de *certiorari* (como sucede, por ejemplo, con los casos de jurisdicción voluntaria), al menos cuando, como ocurre aquí, la naturaleza del proceso ante el TPI tiene características suficientemente análogas a las de una acción civil ordinaria.

En fin, no podemos concluir que la utilización del término "resolución" en la Ley 141 tenga el alcance de un mandato expreso a los efectos de que la parte adversamente afectada por el dictamen final del TPI no tenga disponible el recurso de apelación para revisar el mismo.

III.

"En nuestro ordenamiento existe un derecho fundamental al acceso a información pública." *Trans Ad de P.R. v. Junta de Subastas*, 174 DPR 56, 67 (2008); *Kilómetro 0, Inc. v. Pesquera López*, 207 DPR 200, 207 (2021), citando a Art. II, Sec. 4, Const. ELA, LPRA, Tomo 1; *Ortiz v. Dir. Adm. de los Tribunales*, 152 DPR 161 (2000); *Soto v. Srio. De Justicia*, 112 DPR 477, 485-486 (1982).[3]

Este derecho garantiza que toda persona pueda examinar el contenido de los expedientes, informes y documentos que hayan sido recopilados por el Estado durante sus gestiones

---

[3] Este imperativo constitucional también ha sido ratificado por la vía legislativa, mediante el Artículo 409 del Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA sec. 1781.

gubernamentales. *Kilómetro 0, Inc.*, *supra*, citando a *Ortiz*, *supra*. Ello porque, "[s]in conocimiento de hechos no se puede juzgar; tampoco se puede exigir remedios a los agravios gubernamentales mediante los procedimientos judiciales o a través del proceso de las urnas cada cuatro (4) años". *Soto*, 112 DPR a la pág. 485. Su importancia radica en la noción de que el conocimiento de las gestiones públicas facilita la libre discusión de los asuntos gubernamentales y, por ende, el ejercicio pleno de la libre expresión. *Kilómetro 0, Inc.*, 207 DPR a la pág. 208, citando a *Colón Cabrera v. Caribbean Petroleum*, 170 DPR 582, 590 (2007). Sin acceso a información pública, se "contravendría[n] nuestros principios democráticos que garantizan el derecho del pueblo a pasar juicio fiscalizador sobre todas las acciones y determinaciones del Gobierno." *Trans Ad de P.R.*, 174 DPR a la pág. 67. Ello, a su vez, promueve la transparencia en la función gubernamental, estimulando, así, la sana administración pública. *Bhatia Gautier v. Gobernador*, 199 DPR 59, 80–81 (2017).

Sin embargo, el derecho de acceso a información pública depende, en primer lugar, de que la información solicitada sea, propiamente, pública. *Bhatia Gautier*, 199 DPR a la pág. 81. A tales efectos, el Artículo 1(b) de la Ley Núm. 5 de 8 de diciembre de 1955, conocida como Ley de Administración de Documentos Públicos de Puerto Rico, según enmendada, 3 LPRA sec. 1001(b), define documento público como:

> [T]odo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar que se requiera conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal. Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos.

Es decir, "un documento público es el que un organismo estatal recibe en el curso de sus procedimientos y que está obligado a preservar." *Kilómetro 0, Inc.*, 207 DPR a la pág. 209, citando a *Trans Ad de P.R.*, 174 DPR a la pág. 69. Una vez un documento se ubica dentro de una de las categorías citadas, el mismo es de carácter público, teniendo cualquier ciudadano derecho de acceso a dicho material. *Nieves v. Junta*, 160 DPR 97, 103 (2003).

En otras palabras, una vez el documento es catalogado como público, todo ciudadano y ciudadana tiene legitimación activa para solicitar y acceder a tal información. *Kilómetro 0, Inc.*, *supra*, citando a *Colón Cabrera*, 170 DPR a la pág. 589. Así pues, en la medida en que todo ciudadano tiene el derecho a inspeccionar cualquier documento público, el acto de denegar el acceso, por sí mismo, causa al solicitante un daño claro, palpable y real. *Íd.*, citando a *Ortiz*, 152 DPR a la pág. 177. Cuando el Estado injustificadamente impide al ciudadano inspeccionar un récord público, lesiona su derecho fundamental a estar informado. *Ortiz, supra.*

Cuando el Estado reclama la confidencialidad de algún documento público, éste "tiene la carga de probar que satisface cualquiera de las excepciones antes enumeradas". *Colón Cabrera*, 170 DPR a la pág. 591. Por consiguiente, la negación por parte del Estado a la divulgación de información pública debe estar fundamentada y justificada, pues "[n]o bastan meras generalizaciones". *Santiago v. Bobb y El Mundo, Inc.*, 117 DPR 153,159 (1986). Así pues, le corresponde al Estado el peso de justificar cualquier reclamo de confidencialidad. *E.L.A. v. Casta Developers*, 162 DPR 1, 11 (2004).

Sin embargo, el derecho al acceso a información pública no es absoluto, ni ilimitado, sino que pueden existir intereses apremiantes del Estado que justifiquen un reclamo de confidencialidad de su parte. *Trans Ad de P.R.*, 174 DPR a la pág. 68; *Angueira v. JLBP*,

150 DPR 10, 24 (2000). Para que triunfe un reclamo de confidencialidad, el Estado debe demostrar precisa e inequívocamente la aplicabilidad de alguna de las siguientes excepciones: (1) que una ley así lo declara; (2) que la comunicación está protegida por algún privilegio evidenciario; (3) que la divulgación de la información puede lesionar derechos fundamentales de terceros; (4) que se trate de un confidente, según la Regla 515 de Evidencia de 2009, 32 LPRA Ap. VI, o (5) que sea información oficial conforme a la Regla 514 de Evidencia de 2009, 32 LPRA Ap. VI. *Kilómetro 0, Inc.*, 207 DPR a la pág. 210, citando a *Santiago*, 117 a la pág. 159.

El examen judicial al cual deberá someterse cualquier reclamo de confidencialidad de documentos e información pública dependerá de la excepción que invoque el Estado como fundamento vis à vis el pedido de información. *Ortiz*, 152 DPR a la pág. 178. En particular, cuando el Estado le niega a un ciudadano el acceso a información en su poder, sobre la base de lo dispuesto en una ley o un reglamento, dicha ley o reglamento será evaluada utilizando el escrutinio judicial "estricto". *Íd.*; *Bhatia Gautier*, 199 DPR a la pág. 82; *Colón Cabrera*, 170 DPR a la pág. 593. Al momento de invocar alguna de las excepciones precitadas, el Estado no puede negar el acceso a la información pública de forma caprichosa o arbitraria. *Colón Cabrera*, 170 DPR a la pág. 590.

Para ser sostenido bajo este examen judicial, la ley o reglamento debe cumplir con los siguientes requisitos: (i) que caiga dentro del poder constitucional del gobierno; (ii) que propulse un interés gubernamental apremiante; (iii) que el interés gubernamental no esté directamente relacionado con la supresión de la libertad de expresión; y (4) que la restricción no sea mayor de la necesaria para propulsar dicho interés. *Ortiz, supra*; *Soto*, 112 DPR a las págs. 493-494. Por eso, toda ley que pretenda ocultar

información a un ciudadano bajo el palio de la confidencialidad tiene que justificarse a plenitud y contener normas claras y precisas que permitan identificar adecuadamente el material y las circunstancias en que habrá de aplicarse la norma de accesibilidad. *Angueira*, 150 DPR a las págs. 24-25. Aquella legislación que no contenga estándares apropiados para determinar el tipo de documento e información que habrá de estar sujeta al escrutinio público y que, por el contrario, establezca una norma de confidencialidad absoluta, no puede superar el rigor de la cláusula constitucional que garantiza el derecho a la libre expresión. *Íd*; *López Vives v. Policía de P.R.*, 118 DPR 219, 233 (1987).

IV.

Por otra parte, la Ley 141-2019 fue promulgada a los fines de implantar una política pública de acceso a la información pública; ordenar, organizar y pautar mecanismos procesales sencillos, ágiles y económicos de acceso real a los documentos e información pública; consignar principios e instrumentos de garantía al acceso; ordenar la designación de Oficiales de Información en cada entidad gubernamental; y para otros fines relacionados. *Exposición de Motivos* de la Ley 141-2019.

El Artículo 3 de la Ley 141-2019, 3 LPRA sec. 9913, reafirma la política pública del Estado Libre Asociado de Puerto Rico del modo siguiente:

(1) **La información y documentación que produce el gobierno se presume pública y accesible a todas las personas por igual**.

(2) La información y documentación que produce el gobierno en sus estudios, transacciones y en el ejercicio de la autoridad pública, de manera directa o delegada, son patrimonio y memoria del pueblo de Puerto Rico.

(3) **El derecho constitucional de acceso a la información requiere la transparencia gubernamental**.

(4) **Toda información o documento que se origine, conserve o reciba en cualquier dependencia del**

**Gobierno**, aunque se encuentre bajo la custodia de un tercero, **se presume público y debe estar accesible al Pueblo y la prensa**.

(5) **El derecho de acceso a la información pública es un pilar constitucional y un derecho humano fundamental**.

(6) El acceso a la documentación e información pública tiene que ser ágil, económico y expedito.

(7) Toda persona tiene derecho a obtener la información y documentación pública, sujeto a las normas y excepciones aplicables.

(8) El Gobierno de Puerto Rico establece en la presente Ley **una política de apertura a la información y documentación, que incluya la disponibilidad de la tecnología y los avances necesarios para hacer valer el derecho de los solicitantes a acceder a la información y documentación publica de forma oportuna, objetiva, veraz, completa, reutilizable, procesable y disponible en formatos accesibles, inalterados e íntegros**. (Énfasis suplido).

Con el propósito de llevar a la práctica la aludida política pública, la Ley 141-2019 requiere que todas las entidades gubernamentales designen, de entre sus empleados o funcionarios, Oficiales de Información, quienes se encargarán de producir la información pública solicitada de manera expedita para ser inspeccionada, reproducida o ambas, según se solicite. Art.5 de la Ley 141-2019, 3 LPRA sec. 9915. De igual modo, esta ley establece términos cortos, de diez (10) días, para hacer entrega o hacer disponible la información solicitada. Art. 7 de la Ley 141-2019, 3 LPRA sec. 9917.

Los Oficiales de Información cumplen con los parámetros del estatuto si, según las preferencias del solicitante, realizan una de estas acciones: a) hacen la información disponible al solicitante en las oficinas de la entidad gubernamental para su inspección y reproducción; b) envían información al solicitante por correo electrónico; c) envían copia de la información por correo federal (*First Class*), siempre y cuando, el solicitante esté dispuesto a pagar por sello y otros costos asociados; o d) proveen al solicitante una

dirección de internet (URL) de una página web con instrucciones para acceder a la información solicitada. *Íd.* Además, el precitado Artículo 7 dispone que "[t]oda decisión de denegar la divulgación de información pública tiene que especificar por escrito los fundamentos jurídicos en los que se basa la denegatoria o negativa de entregarla en el término establecido". 3 LPRA sec. 9917.

Por otra parte, si la entidad gubernamental deniega la entrega de la información solicitada, o no contesta dentro del término establecido, en cuyo caso se entenderá que ha denegado la solicitud de información, el solicitante podrá recurrir al TPI. La Ley 141-2019 establece un recurso de revisión especial. Al respecto, el Artículo 9 de la Ley Núm. 141-2019, 3 LPRA sec. 9919, dispone, en lo pertinente, lo siguiente:

> Cualquier persona a la cual una entidad gubernamental le haya notificado su determinación de no entregar la información solicitada o que no haya hecho entrega de la información dentro del término establecido o su prórroga, tendrá derecho a presentar, por derecho propio o a través de su representación legal, ante la sala del Tribunal de Primera Instancia de la Región Judicial donde reside, un Recurso Especial de Acceso a Información Pública.

> […]

> La notificación del recurso a la entidad gubernamental deberá ser realizada por el propio Tribunal sin costo alguno. Para esto, el Secretario del Tribunal de Primera Instancia en que se haya presentado el recurso, emitirá una notificación a la entidad gubernamental que haya notificado al solicitante su determinación de no entregar la información o que no haya hecho entrega de la información dentro del término establecido para que esta comparezca por escrito, apercibiéndole que si así no lo hiciere, se estaría allanando a las alegaciones de la demanda y se procedería a expedir el remedio solicitado que proceda conforme a esta Ley, sin más citarle ni oírle.

> El recurso en cuestión deberá presentarse dentro del término de cumplimiento estricto de treinta (30) días, contados a partir de la fecha en que la entidad gubernamental haya notificado su determinación de no entregar la información solicitada o de la fecha en que venció el término disponible para ello si no hubo contestación.

> La entidad gubernamental notificada con un recurso

bajo esta Ley vendrá obligada a comparecer por medio de su escrito, en un término de diez (10) días laborables, salvo justa causa en cuyo caso no podrá ser un término menor a cinco (5) días laborables, contados a partir de la fecha de la notificación emitida a tales efectos por el Secretario del Tribunal de Primera Instancia. El Tribunal ostentará discreción para acortar el término de diez (10) días establecido siempre que entienda que existe justa causa para así hacerlo en protección de los intereses del solicitante.

El Tribunal tendrá que celebrar una vista dentro del término de tres (3) días laborables de recibir la contestación de la entidad gubernamental de entender que las circunstancias particulares del caso y de la información solicitada así lo requieren.

El Tribunal deberá resolver por escrito la controversia, mediante resolución fundamentada en derecho declarando con o sin lugar la solicitud de producción de información pública en un término de diez (10) días contados desde que la entidad gubernamental emitió su contestación al tribunal o desde que se celebró la vista, de haberse celebrado la misma.

Por último, el Artículo 12 de la Ley 141-2019 establece expresamente una cláusula de interpretación "**en la forma más liberal y beneficiosa para la persona solicitante de información pública**". 3 LPRA sec. 9922. (Énfasis nuestro).

## V.

No existe controversia en cuanto a que la información solicitada por el CPI es pública, dentro del significado del término bajo la Ley de Documentos Públicos de Puerto Rico, *supra*. "Una vez el documento es catalogado como público, todo ciudadano y ciudadana tiene legitimación activa para solicitar y acceder a tal información". *Colón Cabrera*, 170 DPR a la pág. 589. Tampoco hay controversia en cuanto a la legitimidad del CPI en requerir la información solicitada e interponer un recurso especial ante el TPI. *Soto*, 112 DPR a la pág. 485; Art. 9 de la Ley 141-2019, *supra*; Ortiz, 152 DPR a la pág. 177.

Contrario a lo planteado por Turismo, concluimos que ni la ley ni la reglamentación vigente le otorga carácter de confidencial a la información solicitada por el Centro. Lo que la ley y

reglamentación establecen es que las "Declaraciones" relacionadas con la Contribución se divulgarán únicamente a parte interesada. Véanse Artículo 52 de Ley 272 y el Art. 14 del Reglamento[4].

No obstante, esta restricción no es aplicable en este caso, pues el Centro <u>no</u> solicitó, ni el TPI ordenó la divulgación de, las referidas "Declaraciones" o alguna información de naturaleza contributiva que puedan contener las mismas. Únicamente se solicitó un listado de las propiedades destinadas para alquileres a corto plazo, su ubicación, el nombre comercial y el nombre del propietario del inmueble. Nada más. El simple hecho de que esta información también pueda surgir de las "Declaraciones" no le otorga carácter de confidencialidad. Ello por la misma razón que es pública la información sobre el nombre de los empleados de una agencia, independientemente de que esos nombres también consten en el expediente de personal que mantiene la agencia, el cual se considera confidencial. Adviértase que, más allá de invocar la supuesta confidencialidad establecida por la Ley 272 y el Reglamento, Turismo ni siquiera ha intentado plantear alguna otra razón por la cual la información solicitada deba ser considerada confidencial.

Nuestra interpretación del alcance de la Ley 272 y su reglamentación también evita que se suscite una controversia

---

[4] El Artículo 52 de la Ley 272-2003, *ante*, establece lo siguiente

Confidencialidad de la Declaración y otros documentos.
A. La Declaración que se rinda en virtud de las disposiciones de esta Ley, constituirá un documento público. No obstante, y excepto según se establece en este Artículo, solamente podrá inspeccionarse por terceras personas en conformidad con las reglas y reglamentos que adopte la Oficina de Turismo. La Oficina de Turismo podrá requerir que, como requisito mínimo para la inspección, el peticionario sea parte interesada.

B. Ningún funcionario o empleado de la Oficina de Turismo divulgará o dará a conocer bajo ninguna circunstancia, excepto conforme a lo dispuesto en esta Ley, la información contenida en la Declaración, libros, récords u otros documentos suministrados por el Contribuyente, ni permitirá el examen o inspección de los mismos a personas que no estén legalmente autorizadas.

Por su parte, el Artículo 14(a) del Reglamento 8395 dispone:

(a) La Compañía tiene la obligación legal de salvaguardar la confidencialidad de las Declaraciones y los pagos. A tales efectos, solamente las partes interesadas podrán tener acceso a esos documentos.

constitucional sustancial. En efecto, los tribunales debemos, en la medida que sea posible, interpretar las leyes de forma que se eviten potenciales problemas de índole constitucional. Véanse, por ejemplo, *Pueblo v. Yip Berríos*, 142 DPR 386, 421 (1997); *Domínguez Maldonado v. E.L.A.*, 137 DPR 954 (1995); *Molina v. C.R.U.V.*, 114 DPR 295 (1983).

Finalmente, y contrario a lo planteado por Turismo, no tiene pertinencia en esta etapa que el TPI no hubiese notificado al Secretario de Justicia bajo lo dispuesto en la Regla 21.3 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 21.3. Dicha regla contempla que el TPI notifique al Estado Libre Asociado cuando se impugna la constitucionalidad de un estatuto. No obstante, en este caso, no está claro que el TPI tuviese dicha obligación, pues el Centro únicamente impugnó la constitucionalidad de la Ley 272 en la alternativa. De todas maneras, aun si hubiese tenido la referida obligación, la omisión de notificar al Secretario de Justicia habría constituido un error no perjudicial, que no conllevaría la revocación del Dictamen, pues el TPI no pasó juicio sobre la validez constitucional del estatuto.[5]

VI.

Por los fundamentos que anteceden, se confirma la Resolución apelada. Aunque consideramos que la presentación del recurso de referencia no suspendió los procedimientos ante el TPI, ello ante la aplicabilidad de la Regla 18 (B) de nuestro Reglamento, para despejar cualquier duda, determinamos, bajo la Regla 18(A) de nuestro Reglamento, que el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin que tenga que esperar por nuestro mandato. 4 LPRA Ap. XXII-B, R. 18.

---

[5] De igual forma, tampoco tiene pertinencia aquí lo dispuesto en la Regla 59.5 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 59.5, en cuanto a sentencias declaratorias. El Recurso fue correctamente presentado al amparo de la Ley 141-2019, y no es aplicable lo dispuesto en la referida regla.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones